774 A.2d 571 (2001)
340 N.J. Super. 295
STATE of New Jersey, Plaintiff-Respondent,
v.
William EATMAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 4, 2001.
Decided May 7, 2001.
*572 Peter A. Garcia, Acting Public Defender, attorney for appellant (Alison Perrone, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent (Christine A. Hoffman, Deputy Attorney General, of counsel and on the brief).
Before Judges BAIME, WALLACE and LINTNER.
The opinion of the court was delivered by BAIME, P.J.A.D.
Defendant appeals from a conviction for murder (N.J.S.A. 2C:11-3a(1)). The principal question presented concerns the admissibility of prior acts of domestic abuse which were considered by the prosecution's psychiatric expert in rejecting defendant's claim of diminished capacity. We hold that this evidence was properly admitted to rebut the defense's assertion that defendant was suffering from dissociative amnesia at the time of the killing.

I.
On the morning of April 18, 1997, defendant stabbed and killed Dorothy Nicholson, his female companion of fifteen years. The incident occurred in the basement of the couple's house, and was witnessed by defendant's nine year old son, Derrick. From the top of the stairway, Derrick observed defendant choke and stomp the victim as she lay on the basement floor. As Derrick watched, defendant retrieved a knife from the kitchen, returned to the *573 basement and stabbed Nicholson three times.
Defendant then drove Derrick to the home of Ethel Mae Coleman, a family friend, where he confessed that he had "hurt [Nicholson] bad." Defendant urged Coleman to drive to his house and "check" Nicholson's condition. According to Coleman, defendant appeared "nervous" and "angry," and was "rambling" his sentences.
Defendant left Coleman's house and walked across the street to the apartment of his friend, Frank Alston. Defendant told Alston that he had "stabbed" and "stomped" Nicholson. After telephoning the hospital, defendant reported to Alston that Nicholson was "very bad off." Defendant then changed into Alston's clothes, placing his own in a bag near the front door.
Meanwhile, Coleman had arrived at defendant's house. The police had already been summoned. Coleman directed the investigating officers to Alston's apartment. Upon his arrest, defendant appeared "remorseful" and "concerned" about Nicholson's condition. While being transported to police headquarters, defendant asserted that he did not know "what happened." After being apprised of his constitutional rights, defendant acknowledged that he had stabbed Nicholson.
At the police station, defendant was again advised of his constitutional rights. According to Investigator Andrea Craparotta, defendant appeared "calm" and "cooperative." Defendant's confession was tape-recorded. In his statement, defendant recounted that he and Nicholson had argued about money during the hours preceding the killing. Defendant asserted that he became angry after Nicholson struck him in the groin. Defendant recalled punching Nicholson in the face and throwing her to the basement floor where he repeatedly struck her. Defendant was unsure of where he had obtained the knife, which he described as having a black handle and serrated edges. Although defendant could not recall how many times he stabbed the victim, he was nevertheless able to describe several of the details surrounding the incident. He remembered, for example, that he had stabbed Nicholson in the stomach or chest, that he had left the knife in the basement, that the blade might have been broken, and that the victim was lying on her back, face up, on the basement floor. He also recalled the events that immediately followed the killing, including his visits to Coleman's and Alston's residences.
At trial, defendant's expert in psychiatry, Dr. John Verdon, testified that defendant was suffering from dissociative amnesia at the time of the killing. The witness defined that condition as "a splitting off of significant thinking processes," including "memory, ... perception and consciousness." The "major" symptom of the disease was said to be a "lack of recall for a specific time frame of significant or personal events." Verdon explained that dissociative disorders are "episodic." While acknowledging that defendant had engaged in earlier acts of domestic violence, Verdon believed that these incidents were attributable to alcoholism, not dissociative amnesia. According to Verdon, defendant's fatal attack on Nicholson was his first episode of dissociative disorder. In reaching this conclusion, Verdon cited defendant's statement that he was in a "dream ... state" while in jail following the incident, his confusion concerning various details, and his "nonsensical act" in driving Derrick to Coleman's house after the killing. Verdon concluded that defendant did not have the capacity to harbor the requisite mens rea when he stabbed Nicholson to death.
*574 The prosecution's expert, Dr. Steven Simring, painted a much different picture of defendant's mental state. Simring testified that the evidence did not support Verdon's diagnosis of dissociative disorder because defendant had provided the police with a coherent and logical description of the killing. Simring criticized Verdon's failure to take into account defendant's long history of engaging in domestic violence. According to Simring, the cycle of domestic violence involves alternating phases of abuse and "honeymoon period[s]." The witness explained that after obtaining the victim's forgiveness, tension builds, resulting in another act of abuse. Simring concluded that defendant's judgment was beclouded by anger, but that he nevertheless acted purposely in repeatedly thrusting the knife into the victim's body.

II.
Prior to trial, defendant moved to exclude Simring's references to prior incidents of domestic violence. The evidence indicated that six incidents took place between 1965 and 1982. One of the incidents involved a knife attack on defendant's former wife, Elizabeth Carpenter. Three others involved knife assaults on defendant's "live-in" girlfriend, Willie Harris. Two other incidents involved Nicholson. In explaining the importance of these incidents in arriving at his conclusion, Simring stressed that from a psychiatric viewpoint, it was necessary to place the criminal event in its proper context. Simring found that defendant's history of domestic violence against women disclosed an underlying condition of anger and rage that manifested itself in repeated acts of abuse. According to the witness, this evidence was critical in rebutting the thesis that defendant was suffering from dissociative disorder at the time of the killing.
The trial judge denied defendant's motion. While acknowledging that the prior acts of violence disclosed a predisposition to behave in an abusive fashion, the judge concluded that this evidence was highly relevant in rebutting defendant's claim of diminished capacity. The judge permitted Simring to refer to these incidents, but precluded him from describing them in detail. For example, the prosecution was barred from eliciting testimony concerning defendant's use of a knife in the prior attacks. The prosecution assiduously complied with the judge's decision.
Without objection, the judge repeatedly cautioned the jury not to consider the prior acts of domestic violence as substantive evidence. The judge told the jury that it could consider this evidence only to determine the value of the psychiatrist's ultimate conclusion on the issue of defendant's mental state. The judge added that if the psychiatrist's opinion hinged upon the truth of the evidence, the jury would be required to assess the accuracy of the facts underlying the witness's conclusion.
We reject defendant's argument that admission of Simring's references to prior acts of domestic violence violated N.J.R.E. 404(b). That rule provides in pertinent part as follows:
Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
[N.J.R.E. 404(b).]
In State v. Krivacska, 341 N.J.Super. 1, 775 A.2d 6, (App.Div.2001), *575 we recently examined the history and import of the rule. It would be superfluous to trek upon ground so thoroughly covered in that opinion. Suffice it to say that the rule is one of "exclusion" rather than "inclusion," State v. Nance, 148 N.J. 376, 386, 689 A.2d 1351 (1997), and is intended to bar admission of other crimes when such evidence is offered solely to establish the forbidden inference of propensity or predisposition. State v. Stevens, 115 N.J. 289, 299-300, 558 A.2d 833 (1989); State v. Kociolek, 23 N.J. 400, 418-20, 129 A.2d 417 (1957). However, N.J.R.E. 404(b) does not preclude other crime evidence in all instances. It allows admission of such evidence when relevant to prove some fact genuinely in issue. State v. Marrero, 148 N.J. 469, 482, 691 A.2d 293 (1997); State v. Oliver, 133 N.J. 141, 151-54, 627 A.2d 144 (1993). "Other crime" evidence is admissible where: (1) relevant to a material issue, (2) similar in kind and reasonably close in time to the act alleged, (3) clear and convincing, and (4) of sufficient probative value not to be outweighed by its apparent prejudice. State v. Cofield, 127 N.J. 328, 338, 605 A.2d 230 (1992) (citing Abraham P. Ordover, Balancing The Presumptions of Guilt and Innocence: Rules 404(b), 608(b), and 609(a), 38 Emory L.J. 135, 160 (1989)) (footnote omitted).
The issue is presented in a slightly different context in this case. While it is arguable that defendant's prior acts of domestic abuse demonstrated a predisposition or propensity to commit the crime for which he was tried, the evidence was not inadmissible on that account. The gist of Dr. Simring's testimony was that defendant harbored a barely suppressed rage against women as evidenced by a long-standing pattern of domestic violence. The thesis underlying Simring's opinion was that a relatively trivial domestic dispute could serve as the detonating force resulting in a violent episode. This evidence countered Dr. Verdon's theory that defendant was in a dream-like state, and that he acted without purpose when he stabbed the victim to death. It was Simring's opinion that while defendant's judgment might have been beclouded by rage, it was nevertheless his conscious object to kill the victim or cause serious bodily injury resulting in death.
An expert is permitted to rely on hearsay information in forming his opinion concerning the defendant's mental state. See, e.g., State v. Krol, 68 N.J. 236, 261, 344 A.2d 289 (1975); State v. Maik, 60 N.J. 203, 208, 287 A.2d 715 (1972); State v. Whitlow, 45 N.J. 3, 19, 210 A.2d 763 (1965); State v. Lucas, 30 N.J. 37, 79, 152 A.2d 50 (1959). This exception to the general rule does not serve as a principle of wholesale admissibility of otherwise inadmissible evidence. See State v. Rose, 112 N.J. 454, 499-501, 548 A.2d 1058 (1988). An expert witness should not be allowed to serve as a conduit for alerting the jury to evidence it would not otherwise be permitted to hear. State v. Burris, 298 N.J.Super. 505, 512, 689 A.2d 860 (App.Div.), certif. denied, 152 N.J. 187, 704 A.2d 17 (1997); Day v. Lorenc, 296 N.J.Super. 262, 267, 686 A.2d 1193 (App.Div.1996); State v. Pasterick, 285 N.J.Super. 607, 620-21, 667 A.2d 1103 (App.Div.1995). The otherwise inadmissible evidence, here testimony relating to prior crimes, must be of a type the experts in the relevant field of practice rely on in arriving at their conclusions. See Ryan v. KDI Sylvan Pools, Inc., 121 N.J. 276, 288-89, 579 A.2d 1241 (1990). Moreover, such evidence is always subject to the catch-all protection barring admission of testimony where its probative value is outweighed by its capacity to prejudice the defendant or confuse the jury. Applying these standards, we hold that the trial *576 judge correctly admitted Simring's testimony.
The trial judge's instructions to the jury on the subject did not constitute plain error. R. 2:10-2. The jury instructions comported with our Supreme Court's decisions in State v. Maik, 60 N.J. at 208, 287 A.2d 715, and State v. Lucas, 30 N.J. at 79-80, 152 A.2d 50. While it would have been preferable had the judge incorporated in his charge the factual and legal contentions of the parties, defendant neither submitted a request nor interposed an objection. The instruction as given did not have the capacity to lead to an unjust result. State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).

III.
Defendant's remaining arguments clearly lack merit and do not require extended discussion. R. 2:11-3(e)(2). We find ample evidence in the record supporting the trial judge's conclusion that defendant voluntarily waived his rights, and that his confession was admissible. State v. Presha, 163 N.J. 304, 312, 748 A.2d 1108 (2000); State v. Galloway, 133 N.J. 631, 634, 628 A.2d 735 (1993). The judge's factual findings in that respect are supported by substantial credible evidence. State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964). We are unpersuaded by defendant's claim that the prosecutor deprived him of a fair trial by improperly attacking his character during the cross-examination of Frank Alston. While we do not endorse the prosecutor's tactics, we are satisfied that defendant was not prejudiced. The error clearly did not deflect the jury from a fair consideration of the issues presented. State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979). Finally, although the judge's charge on diminished capacity was skimpy and barely passed muster, his earlier explanation of the law during a break in the summation tracked the model charge and fairly conveyed the applicable legal principles.
Affirmed.