815 A.2d 481 (2002)
357 N.J. Super. 326
STATE of New Jersey, Plaintiff-Respondent,
v.
Donald BURRIS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 2002.
Decided December 30, 2002.
*482 Robert L. Sloan, Assistant Deputy Public Defender, argued the cause for appellant (Peter A. Garcia, Acting Public Defender, attorney; Mr. Sloan, of counsel and on the brief).
Linda A. Rinaldi, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Acting Attorney General, attorney; Ms. Rinaldi, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and HOENS.
The opinion of the court was delivered by HOENS, J.A.D.
Donald Burris was indicted in connection with the August 6, 1997 shooting death of Peggy Selvaggio in the employee parking lot of Harrah's Casino in Atlantic City. The indictment charged defendant in three counts: first-degree knowing or purposeful murder, N.J.S.A. 2C:11-3a(1) and (2); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4a; and third-degree unlawful possession of a shotgun, N.J.S.A. 2C:39-5c(2). The third-degree charge was dismissed prior to trial. Following a jury trial, the defendant was found guilty of both murder and the second-degree firearm charge. His motion for a new trial was denied and he was sentenced to a term of sixty-five years for murder, subject to an 85% parole disqualification under the No Early Release Act (NERA), and he was assessed fees and penalties. For sentencing purposes, the conviction on the firearm count was merged into the murder conviction.
On appeal, counsel for defendant raises the following points:
POINT I
THE IMPROPER ADMISSION OF HEARSAY STATEMENTS FROM THE VICTIM CONCERNING HER FEAR OF DEFENDANT AS PROOF OF DEFENDANT'S MOTIVE OR STATE OF MIND VIOLATED HIS RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10.
POINT II
THE ADMISSION OF IRRELEVANT OTHER-CRIMES EVIDENCE OF A VIOLENT INCIDENT INVOLVING DEFENDANT AND HIS EX-WIFE *483 IMPROPERLY SUGGESTED A PROPENSITY FOR VIOLENT BEHAVIOR, IN VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10.
POINT III
THE TRIAL JUDGE'S FAILURE TO INSTRUCT THE JURORS THAT A CONTINUING COURSE OF ILL TREATMENT COULD PROVIDE THE BASIS FOR A VERDICT OF PASSION/PROVOCATION MANSLAUGHTER DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (Not Raised Below)
POINT IV
DEFENDANT'S MURDER CONVICTION WAS NOT SUBJECT TO THE 85% PAROLE INELIGIBILITY PERIOD OF THE NO EARLY RELEASE ACT. (Not Raised Below)
We begin with the observation that defendant did not deny that he had shot the victim with a shotgun, firing six times and at relatively close range, causing her death. His defense, rather, was that he did so while in a trance-like state and without conscious thought. The focus of the trial, therefore, was almost entirely upon the evidence relating to defendant's state of mind and his psychiatric condition on the night of the victim's death.
Defendant argues that a number of statements admitted into evidence deprived him of a fair trial. First, defendant objected to the testimony of Abigail Paisley, a cocktail waitress and friend of the victim, who spoke with the victim just before she left the casino on the night of her murder. Following a Rule 104 hearing outside of the presence of the jury, she was permitted to testify that the victim had told her shortly before the night of the murder that her romantic relationship with the defendant had ended, that the defendant had asked her to return a car he had given her, and that she was considering seeking a restraining order.
Second, defendant objected to the testimony of Sharon Flood, who worked with Selvaggio at a bar in which Selvaggio had an ownership interest that had been secretly funded by the defendant. The trial judge permitted Flood to testify only that she overheard a telephone conversation between the victim and the defendant shortly before the murder in which the defendant threatened to kill the victim. In spite of the judge's limiting ruling, Flood testified that the victim, after asking the defendant about money she owed him for the car said "Please stop calling me and bothering me. What do you mean you want me to give you my mom's life insurance policy for a trust fund for your kids?. . . Don't threaten to kill me. I have a page drawn up. If something happened to me, they're going to look at you and they're not going to stop looking until they prove you killed me ..." Because the judge had previously ruled that the reference to the alleged "page" she had drawn up was inadmissible, he immediately instructed the jurors not to consider it and not to consider any evidence concerning her plans, motivations, and particularly her plans to contact an attorney. When the witness repeated the reference later in her testimony, the judge again instructed the jurors to disregard it. In addition, he gave a further limiting instruction, in relevant part, as follows:
THE COURT: Okay. Members of the jury, before cross-examination, there's some instructions which I have to give *484 you as to certain portions of the testimony which were given by this witness.
There are statements which you heard attributable to the defendant, and they are admitted only for a limited purpose and specifically those statements are not admissible to prove the disposition of the defendant or to show that he acted in conformity with those statements. The only purpose of those admissions as to what the defendant is alleged to have said and the only purpose for which you can use such statements would be on any issue of the defendant's motive, his intent, his plan and his knowledge. Those statement can be used for no other purpose. And specifically, any such statements are not evidence and should not be considered and are not evidence of Peggy Selvaggio's state of mind or concerns. As I indicated to you, her state of mind or her concerns would not be relevant and should be disregarded by you. So to repeat, the evidence would be usable only on issues of the defendant's motive, intent, plan or knowledge and for no other purpose.
Third, defendant objected to the testimony of Diane Hawkins, another employee at the bar, who testified that she overheard Selvaggio in the same telephone conversation say "Don't threaten to kill me, because if you do, there's a paper that I have that will point to you." The defense objected to that statement and the court directed the prosecutor as defense counsel requested.
Fourth, defendant objected to the testimony of Larry Powell that he believed that Selvaggio had a premonition and that she had decided to have an alarm put on her home. Again, the court in the presence of the jury reminded the prosecutor that the testimony as to the victim's plans or fears was inappropriate.
Finally, defendant objected to the testimony of Thomas Coleman, an attorney with whom Selvaggio had consulted, and the testimony of Thomas Doyle, who had been a partner in the bar with Selvaggio. The judge ruled in advance of their testimony that statements by the victim about her fears for her safety were inadmissible. Coleman, however, was permitted to testify that Selvaggio had consulted him about the requirements for obtaining a restraining order because the judge determined that the credibility of the threats defendant made to her had been brought into issue by the defendant.
Defendant's contention on appeal that these statements were inadmissible hearsay which deprived him of a fair trial is without merit. The statements, either analyzed singly or in combination, were admissible for the limited purpose ascribed to them by the trial judge and were appropriately so limited. First, the testimony about the telephone conversation overheard by two of Selvaggio's co-workers was double hearsay because it included both the statement attributed to the victim and the apparent threat to kill the victim attributed to defendant. Rule 805 permits the introduction of such a statement into evidence if there is a hearsay exception that applies to the statement itself and if there is a further independent basis that would make the included hearsay, that is, the statement attributed to the defendant, admissible. N.J.R.E. 805; Gresham v. Massachusetts Mutual Life Ins. Co., 248 N.J.Super. 64, 67, 590 A.2d 241 (App.Div. 1991). Here, the trial judge explicitly recognized that the proffered testimony was double hearsay and engaged in the appropriate analysis. The statement by Selvaggio "don't threaten me" was admissible as either her present sense impression, N.J.R.E. 803(c)(1), or her excited utterance. N.J.R.E. 803(c)(2). The implicit *485 statement by defendant, that is the included hearsay threat by him to which Selvaggio referred, was equally admissible as a statement by him against interest. N.J.R.E. 803(c)(25). Therefore, both the hearsay statement attributed to Selvaggio and the included hearsay statement attributed to defendant were admissible in accordance with the Rule 805 analysis.
Moreover, the judge appropriately considered the hearsay issue in a Rule 104 hearing, and gave limiting instructions both at the time the testimony was given and again at the time of the charge, which directed the attention of the jury to the only proper use of that testimony. He correctly noted that the victim's state of mind was irrelevant, see State v. Machado, 111 N.J. 480, 486-87, 545 A.2d 174 (1988), but that the statements were relevant either to dispel the suggestion that defendant and the victim had a loving relationship inconsistent with murder or to prove defendant's motive and state of mind. See State v. Pitts, 116 N.J. 580, 602, 562 A.2d 1320 (1989), citing State v. Breakiron, 210 N.J.Super. 442, 460-61, 510 A.2d 80 (App. Div.1986), rev'd on other grounds 108 N.J. 591, 532 A.2d 199 (1987); State v. Slocum, 130 N.J.Super. 358, 362-63, 327 A.2d 244 (App.Div.1974). There was a thorough analysis by the judge and a careful cautionary instruction on the limited relevance of the testimony. The defendant's contentions as to the other statements are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).
Defendant next contends that cross-examination of one of the defense psychiatrists and the testimony on rebuttal by the State's expert psychiatrist improperly included references to prior crimes or bad acts. See N.J.R.E. 404(b). We disagree. The focus of the defense was that at the time of the shooting, the defendant was acting without volition, fearful that the victim was about to have him arrested and overwhelmed that she was taunting him with the power that she had over him. The essence of the evidence on this issue was that the two had been engaged in a relationship punctuated by her bizarre sexual demands that he could not resist. The defense contended that the victim had taken defendant's life savings for her investment in the bar and in a liquor store, that she had left him without any of those funds for the future education and support of his own children, that she had no intention of repaying him, that she had broken off the relationship when his money ran out, and that she planned to have him arrested as a part of her plot to leave him penniless and alone.
At the same time, the defense contended that defendant remained deeply in love with the victim and feared for her safety once she had moved out of their condominium and into the apartment behind the bar she co-owned. The defense thus contended that on the night of the shooting, defendant went to the parking lot to give Selvaggio a shotgun for her use to protect herself, that he was sitting in her car waiting to give her the gun, that she approached and threatened to call the police and have him arrested in order to get rid of him and avoid having to repay the nearly $300,000 she had borrowed for the purchase of the car and the investment in the two businesses, and that he then shot her six times while in a trance-like state, overwhelmed by the cumulative effect of the provocation.
Two defense psychiatrists and a psychologist opined that the defendant was in a dissociative state at the time of the shootings. The psychiatric testimony was based on defendant's relationship with the victim and on descriptions of his behavior by witnesses, including the police, who observed him around the time of the shootings.
*486 They also based their conclusions on their interviews with defendant, their review of the State's expert's videotaped interview with him, and his scores on the psychological tests that were administered. One of the three defense experts, Dr. Glass, testified that the defendant had a passive nature and was in effect being overborne by the victim. He offered the opinion that defendant was in a dissociative state at the time of the shooting, meaning that he acted without volition and without being conscious of his acts. As a part of the basis for that opinion, Dr. Glass pointed out that looking for patterns of behavior and for consistency across behaviors was important. He testified that defendant was generous, compliant with the victim's desires, and always gave in to the victim's wishes. He testified that defendant was calm, easy-going and mild mannered in his relationships with his two previous wives. He testified that defendant's behavior both immediately before and after the shooting was consistent with a dissociative state.
On cross-examination, Dr. Glass was asked about a 1995 incident in which the defendant, angered at his then estranged second wife over a financial dispute relating to an automobile, went to her home in the middle of the night and smashed the vehicle in a rage, resulting in her 911 call. Over the objection of the defense, the judge permitted the cross-examination on the ground that it was relevant to impugn the expert's assertion that the defendant had a passive nature with women with whom he had a romantic relationship. The State's rebuttal psychiatrist, Dr. Greenberg, utilized the same incident to support his opinion that the defendant acted out of rage and was not in a dissociative state when he shot Selvaggio in the parking lot. The evidence of the 1995 incident, therefore, was used in the trial in two different contexts, and for two different purposes. First, it was used in cross-examination of the defense expert for the purpose of undermining his credibility by attacking a part of the factual basis for his opinion. Second, it was used by the State's rebuttal expert in support of his opinion that the defendant was not in a dissociative state when he shot the victim. Each of these uses of the 1995 incident implicates different evidentiary concerns and thus each must be separately addressed.
Evidence of "other crimes, wrongs, or acts" is not admissible to "prove the disposition of a person in order to show that he acted in conformity therewith." N.J.R.E. 404(b); State v. Cofield, 127 N.J. 328, 334-35, 605 A.2d 230 (1992). Such evidence, however, is admissible for other purposes as defined in the rule. Ibid. The issue, then, is whether the use of this evidence of a prior bad act was permissible in either of the circumstances where it was utilized in this trial.
We first consider the use of the 1995 incident by the State in cross-examining the defense psychiatrist. In addressing the defendant's objection to the use of the prior incident as part of the cross-examination of the defense psychiatrist, the court found that, consistent with the test set forth in State v. Cofield, supra, the prior incident was relevant to test the psychiatrist's opinions about defendant's passive nature and mental processes. We agree. The defendant's expert placed defendant's mental state and his allegedly passive nature directly in issue, thus making contrary evidence of behavior close in time and similar in kind probative of a fact genuinely in dispute. See State v. Cofield, supra, 127 N.J. at 341, 605 A.2d 230.
There is no doubt but that the diagnosis of a psychiatric disorder is based in part on an examination of prior behaviors in similar and in different settings. As a *487 result, the testimony of a psychiatrist often relies in large measure on the analysis of patterns of behavior. Here the defendant's expert, Dr. Glass, did precisely that, analyzing the pattern of the defendant's behavior on the night in question against the background of his prior experiences and his prior behaviors. A significant part of Dr. Glass's testimony therefore rested on the opinion that defendant's prior patterns of behavior in his relationship with the victim and with his two former wives were not consistent with rage. In that context, however, the 1995 event, in which a dispute with a woman over money and a car had sparked a rage reaction, was a permissible subject for cross-examination because the incident demonstrated behavior completely contrary to the expert's theory and his diagnosis. It was an incident about which the defendant had spoken with the psychiatrist and it was a part of the prior behavioral history of the defendant of the very type used by the expert in supporting his opinion about dissociation. The cross-examination about the 1995 incident therefore was simply not offered for any purpose impermissible under Rule 404(b).
As our Supreme Court has held, "[d]eterminations on the admissibility of other-crime evidence are left to the discretion of the trial court" in light of its greater familiarity with the evidence and the proceedings. State v. Marrero, 148 N.J. 469, 483, 691 A.2d 293 (1997), citing State v. Ramseur, 106 N.J. 123, 266, 524 A.2d 188 (1987). Absent a clear error of judgment concerning the probative/prejudice balance applicable to other crimes evidence, that exercise of discretion will not be overturned. Ibid. Here we perceive no such error in judgment.
Nor was there any error in permitting the use of the 1995 incident by the State's rebuttal expert. We recently addressed the use of other crimes evidence by a psychiatrist to rebut a defense diagnosis of dissociation. State v. Eatman, 340 N.J.Super. 295, 774 A.2d 571 (App.Div.), certif. denied, 170 N.J. 85, 784 A.2d 718 (2001). In Eatman, the defendant was charged with murder of his paramour and relied on a psychiatrist who testified that he stabbed her in a dream-like dissociative state. The State's rebuttal expert testified that the defendant acted out of a barely suppressed rage against women, an opinion supported by defendant's long history of documented acts of domestic violence. Id. at 301, 774 A.2d 571. In Eatman, we noted that N.J.R.E. 404(b) does not preclude evidence of other crimes in all circumstances. Rather, the rule permits the introduction of such evidence "when relevant to prove some fact genuinely in issue." Ibid. As we held there, the use by a psychiatrist of such evidence in response to a defense based on dissociation is generally permissible. Id. at 302, 774 A.2d 571.
In part, our decision in Eatman was based upon our recognition that experts are entitled to significant leeway in their testimony under the Rule 703 analysis. Because an expert, by definition, is one whose training, education or experience qualifies him or her to explain matters otherwise beyond the ken of the normal juror, N.J.R.E. 702, we test the matters about which an expert can testify in the context of what experts in the field ordinarily regard as reliable. It is well-established therefore that an expert may rely upon and testify about otherwise inadmissible evidence on which his opinion is based if it is of a kind and nature others in the field rely upon. Ryan v. K.D.I. Sylvan Pools, Inc. 121 N.J. 276, 288-89, 579 A.2d 1241 (1990); State v. Pasterick, 285 N.J.Super. 607, 620-21, 667 A.2d 1103 (App.Div.1995). While we recognize that this rule cannot be used as a vehicle for *488 "wholesale admissibility of otherwise inadmissible evidence," State v. Eatman, supra, 340 N.J.Super. at 302, 774 A.2d 571, citing State v. Rose, 112 N.J. 454, 499-501, 548 A.2d 1058 (1988), here there was no effort to do so. Here, the information about the 1995 incident was derived from two sources, each independently admissible. It was both contained in a police report, admissible under the business record rule, N.J.R.E. 803(c)(6), and it was related to the examining psychiatrists by the defendant, thus qualifying as a statement against interest admissible under that rule. N.J.R.E. 803(c)(25). The independent admissibility of the source of the information, coupled with the expert's testimony that the information was of the type customarily relied upon, made its admission here appropriate. As it was not offered for an impermissible purpose, nothing in the rule precluded it. See State v. Cofield, supra.
Moreover, the judge gave an appropriate charge to the jury about the prior incident. He specifically charged the jury, as defense counsel requested, that the evidence itself would not normally be admissible and why. He specifically cautioned them that they could not use the incident for the impermissible purpose of demonstrating that the defendant had a propensity to violence or acted in accordance with any such propensity. He specifically charged them about the limitation on the use of the evidence as it related to the experts' theories on the defendant's state of mind on the night in question.
We recognize the inherent dangers of permitting experts to testify about matters not otherwise admissible. As we noted most recently in State v. Vandeweaghe, 351 N.J.Super. 467, 799 A.2d 1 (App.Div. 2002), otherwise inadmissible matter does not become substantively admissible merely because it was part of the basis for an expert's opinion. Rather, it becomes admissible only for "the limited purpose of apprising the jury of the basis of the opinion." Id. at 480, 799 A.2d 1, citing State v. Farthing, 331 N.J.Super. 58, 77, 751 A.2d 123 (App.Div.), certif. denied, 165 N.J. 530, 760 A.2d 784 (2000). Therefore, even were there some infirmity in the evidence of the 1995 incident, it could nonetheless be used both in cross-examination to test the defense expert's opinion and as part of the basis for the State's expert's opinion. Here, unlike the hearsay utilized by the expert in Vandeweaghe, the prior bad acts evidence that the State's expert relied upon was properly before the jury. See State v. Vandeweaghe, supra.
We are not here faced with the sort of extensive hearsay testimony about prior behaviors that we confronted in Vandeweaghe, supra, 351 N.J.Super. at 480-81, 799 A.2d 1, but with a narrowly confined, single incident, not itself hearsay, directly relevant to the heart of the expert's opinion. While the nature of the incident itself was such that it carried with it the risk that the jury would use it for the impermissible purpose, the trial judge discharged his gatekeeper duty to determine its relevance and he properly charged the jury as to the limited role that the incident could play in their evaluation of the evidence. We therefore find no error in the admission of the evidence of the 1995 incident through the cross-examination of the defendant's expert or the direct testimony of the rebuttal expert.
Defendant's third point, respecting the passion/provocation charge, does not merit discussion. R. 2:11-3(e)(2).
Finally, respecting the sentence imposed, defendant's position is persuasive. He argues that the sentence, which included a parole disqualifier of 85% under NERA, was improper. This court has previously held that the NERA provisions *489 respecting parole disqualification do not apply to convictions for murder. State v. Manzie, 335 N.J.Super. 267, 278, 762 A.2d 276 (App.Div.2000). That decision was affirmed by an equally divided Supreme Court. State v. Manzie, 168 N.J. 113, 773 A.2d 659 (2001). While that affirmance does not constitute binding precedent, we are not inclined to revisit the issue as the State suggests. See State v. Vandeweaghe, supra, 351 N.J.Super. at 485, 799 A.2d 1; State v. Andino, 345 N.J.Super. 35, 38-40, 783 A.2d 267 (App.Div.2001); see also State v. Parolin, 171 N.J. 223, 233, 793 A.2d 638 (2002).
We therefore vacate the sentence to the extent that it included the NERA parole disqualifier and remand the matter to the trial court for the correction of the sentence. In all other respects, the judgment of conviction is affirmed.