# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2621-18T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF S.A.,
SVP-779-18.

_____

Argued May 14, 2019 – Decided May 29, 2019

Before Judges Fisher, Hoffman and Suter.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-779-18.

Joan D. Van Pelt, Designated Counsel, argued the cause for appellant S.A. (Joseph E. Krakora, Public Defender, attorney).

Nicholas Logothetis, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney).

PER CURIAM

Appellant S.A. appeals the judgment that civilly committed him to the Special Treatment Unit (STU) as a sexually violent predator under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. We affirm the judgment.

From 1997 and 1998, appellant sexually assaulted five children—all of whom were male and between the ages of six and fifteen—by performing oral sex on the victims without their consent, having them perform oral sex on him, and exposing himself and masturbating in front of them. He was twenty-three or twenty-four when he committed these offenses. Appellant was charged in Pennsylvania where the offenses occurred with five counts of involuntary deviate sexual intercourse and the corruption of minors.

After appellant's arrest in Pennsylvania, a parent in New Jersey alerted the Hamilton Township police that appellant may have sexually abused her son. Investigation revealed that between 1994 to 1996, appellant sexually assaulted five male children, ages eight to thirteen, by forcing his victims to perform oral sex, performing oral sex on them, watching X-rated movies, and masturbating with or in front of them. Appellant was charged with four counts each of first-degree aggravated sexual assault and second-degree sexual assault; two counts of endangering the welfare of a child; two counts of fourth-degree criminal sexual contact; and one count of third-degree endangerment.

In 1998, appellant pleaded guilty to the charges in Pennsylvania where he was sentenced to a term of seven years and six months to twenty-five years in prison. In July 2004, appellant pleaded guilty in New Jersey to two counts of

second-degree sexual assault, N.J.S.A. 2C:14-2(b), and one count of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4. He was sentenced to a ten-year term at the Avenel Adult Diagnostic Treatment Center (ADTC) on the sexual assault counts and a five-year concurrent term on the endangerment count, also to be served at ADTC. The New Jersey sentences were consecutive to the sentence he was serving in Pennsylvania. He was sentenced to comply with all Megan's Law[1] requirements.

Appellant completed a treatment program for sex offenders while incarcerated in Pennsylvania. In January 2012, when appellant completed his sentence in Pennsylvania, he was transferred to ADTC to serve his New Jersey sentence, where he also participated in sex offender specific treatment. In January 2018, the State petitioned to civilly commit appellant under the SVPA. He was temporarily committed to STU.

Dr. Indira Cidambi, a psychiatrist, interviewed appellant twice in 2018. She testified at the SVPA civil commitment hearing that she diagnosed appellant with three disorders: "pedophilic disorder, non-exclusive type, attracted to males"; "other specified personality disorder"; and "schizoaffective disorder."

---

[1] N.J.S.A. 2C:7-1 to -23.

She testified that both the pedophilic disorder and personality disorder predispose appellant to sexual reoffending.

Dr. Cidambi testified about appellant's underlying offenses in Pennsylvania and New Jersey. Appellant acknowledged to Dr. Cidambi that he committed offenses by manipulating and grooming his victims. The July 2017 treatment summary report from ADTC that Dr. Cidambi relied on in forming her opinion indicated that after seven years of treatment there, appellant's insights were "superficial." The report said appellant continued to try to exert influence over the younger inmates by buying them food and other items.

Dr. Cidambi testified that appellant scored a two on the Static-99R,[2] which put him "in an average risk category of sex offenders." She thought the score was an underestimate, however, when combined with dynamic risk factors. Dr. Cidambi testified that despite years of sex offender treatment, appellant still did not have a depth of understanding; "he is not able to explain his deviancy . . . he's still struggling." She explained he "has poor self-regulation, which is seen through the behavior at the ADTC, sexually acting out, [and] poor cognitive

---

[2] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." In re Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (citing Andrew Harris et al., Static-99 Coding Rules Revised-2003 5 (2003)).

A-2621-18T5

problem solving skills." In her opinion, appellant would be "highly likely . . . to reoffend if he is not . . . confined to a structured environment such as STU." She stated in her report that his "lack of volitional control is not only evidenced in his sexual crimes in the community, but also his continued impulsive sexual actions while incarcerated." She concluded his "propensity to sexually re-offend has not been significantly mitigated."

Dr. Eugene Dunaev, a psychologist, conducted a forensic evaluation of appellant while at STU and prepared a report. He testified that appellant had a large number of victims in two different states; there was a high frequency of sexual abuse; he used some victims to entice others; and the abuse lasted for several years. Dr. Dunaev concluded this was a "lifestyle that [appellant] developed in the community," meaning that he looked for new victims. Appellant demonstrated "impulsivity and also the kind of long, thought out predatory pattern of looking for new victims." His victims were between six and fifteen, meaning that appellant was a fixated pedophile. He focused his life "on having sexual activity with children." According to the doctor, he was able to "groom and manipulate the children" and also was "able to circumnavigate the adults and the family, and hide his sexual abuse from them."

After years in treatment in Pennsylvania and at the ADTC, Dr. Dunaev reported that appellant denied sexual attraction to young boys even though that was his history. He also reviewed appellant's ADTC treatment records. These suggested appellant was "emotionally unstable," "impulsive" and had "poor judgment," and that his engagement with treatment at ADTC was "superficial."

Appellant's PCL-R[3] score indicated a moderate range of psychopathy that, according to Dr. Dunaev, meant he is "a person who deceives." The Stable-2007[4] test scored in the "high range of dynamic treatment needs." Dr. Dunaev testified that the Static-99 score of two undervalued appellant's risk.

Based on his clinical interview with appellant, Dr. Dunaev testified that appellant was either withholding information about his offenses or trying to "get over" on those assessing him. He still had some "distortions" regarding his victims, because appellant expressed to the doctor that they felt "cared for" by him, or their "grades went up," or one boy "stopped wetting the bed."

---

[3] "The PCL-R test is a widely used method to measure psychopathic personality traits." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 206 (2001) (Baime, J., dissenting).

[4] The Stable-2007 is an actuarial instrument used to assess dynamic risk factors that can change over time. Kevin Baldwin, Sex Offender Risk Assessment, Sex Offender Management Assessment and Planning Initiative 2-3 (July 2015), https://www.smart.gov/pdfs/SexOffenderRiskAssessment.pdf.

A-2621-18T5

Dr. Dunaev diagnosed appellant with "pedophilic disorder, sexually attracted to males, non-exclusive type" that he said "predisposes him to commit sexually violent acts." He also diagnosed appellant with an "other specified personality disorder (with antisocial features)." In combination, the disorders created a lifestyle that focuses "largely on sexual impulses." He was manipulative and able to hide his actions for years; he also was manipulative at ADTC, which "confirmed" the doctor's diagnosis of a personality disorder. Appellant was diagnosed with "schizoaffective disorder," although by itself this did not predispose him to commit sexually violent acts.

Dr. Dunaev testified that "when [the disorders] come together, they make [appellant] highly likely to engage in sexual violence in the community." Although appellant consistently attended all his programs in Pennsylvania and at ADTC, and voluntarily enrolled in sex offender specific treatment at STU, Dr. Dunaev concluded that appellant "tends to minimize things. He changes his story, so that is a concern and could be a treatment block whether he is doing treatment here or on the outside in an outpatient setting." Dr. Dunaev testified that appellant is "highly likely to sexually reoffend in the community" if he were released. Factors that supported his conclusion included appellants "sexual deviance, anti-social traits, as well as serious mental illness."

Dr. Daniel Greenfield, a psychiatrist, performed a forensic evaluation and prepared a report for appellant. He testified that "from a clinical perspective . . . [appellant] could safely be discharged with a good treatment . . . and follow-up plan and monitoring in place, and would not be highly likely to reoffend sexually . . . ." He diagnosed appellant with "pedophilic disorder exclusive type (males) [and] schizoaffective disorder," but not with "other specified personality disorder." Neither disorder "predisposed" appellant to "commit crimes of sexual violence." Dr. Dunaev testified that appellant is "highly likely to sexually reoffend in the community" if he were released. Factors that led Dr. Greenfield to conclude appellant was not likely to reoffend included appellant's intelligence, his current age (then forty-four), the lack of an alcohol or drug problem, the stability of his psychotic level disorder, and low scores on the various tests.

In his view, appellant would be highly likely to comply with conditions of release because he is "not as impulsive as he used to be." Dr. Greenfield discounted the ADTC treatment summary in forming his opinion because its "description of what [appellant] did was so vague." He thought appellant "largely learned his lesson and . . . is not likely to re-engage in those kinds of protean behaviors if he were released." At the same time, he testified "it would

A-2621-18T5

be an incredible mistake just to discharge him with no treatment plan and no monitoring and no nothing. That would be a guaranteed disaster." The doctor suggested a structured discharge plan that included furloughs to determine if appellant could apply the interventions he learned from treatment when he is in the community.

The court held that appellant met the criteria for civil commitment under the SVPA. It found that appellant was convicted of sexual offenses against multiple prepubescent victims in New Jersey and Pennsylvania, and that these offenses spanned more than a two-year period. Appellant manipulated the adults to gain access to the children. While incarcerated, appellant received sex offender treatment in Pennsylvania and in New Jersey, but his treatment was "very superficial" because he did not do the necessary work, even though intellectually he had the capacity. The court concluded "the treatment effect [was] very minor." He has been in STU since 2018 and that minor treatment effect has "continued right on through here."

The court reviewed the evidence and testimony of the expert witnesses. He concluded that Dr. Cidambi and Dr. Dunaev were credible witnesses. The court found, based on their testimony, that there was clear and convincing evidence appellant "suffers from pedophilia" and that "predisposes him to sexual

violence."  The court also found appellant had "serious difficulty controlling his sexually violent behavior," he presently "is highly likely to sexually reoffend" and would need additional treatment.  The court also found that Dr. Greenfield was credible but disagreed with him about whether appellant was highly likely to reoffend.

Appellant appeals his civil commitment under the SVPA.  He contends the court erred in finding that he was highly likely to reoffend because of his years of sex offender treatment and the fact that he now is forty-four years old. He contends the court erred by relying on the ADTC treatment summary as substantive evidence.  This was the sole issue raised at oral argument.

Our scope of review of judgments in SVPA commitment cases is "extremely narrow."  R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)).  "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'"  Ibid.  (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).  "We give deference to the findings of our trial judges because they have the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Ibid.  (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  "Accordingly, an appellate court should not modify a trial

10

court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58). "So long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." Ibid. (quoting Johnson, 42 N.J. at 162); see also In re Civil Commitment of J.M.B., 197 N.J. 563, 597 (2009).

Involuntary civil commitment under the SVPA can follow an offender's completion of a custodial sentence. Three requirements must be satisfied to classify a person as a sexually violent predator: (1) "that the individual has been convicted of a sexually violent offense"; (2) "that he suffers from a mental abnormality or personality disorder"; and (3) "that as a result of his psychiatric abnormality or disorder, 'it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend.'" R.F., 217 N.J. at 173 (quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)); see N.J.S.A. 30:4-27.26.

The SVPA defines "mental abnormality" as "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." N.J.S.A. 30:4-27.26. The mental abnormality or personality disorder "must affect an individual's

ability to control his or her sexually harmful conduct." W.Z., 173 N.J. at 127. A showing of an impaired ability to control sexually dangerous behavior will suffice to prove a mental abnormality. See id. at 129; see also R.F., 217 N.J. at 173-74.

At an SVPA commitment hearing, the State has the burden of proving the offender poses a threat "to the health and safety of others because of the likelihood of his or her engaging in sexually violent acts." W.Z., 173 N.J. at 132. "[T]he State must prove that threat by demonstrating that the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." Ibid.

There was ample evidence to support the court's finding that appellant should be civilly committed to STU under the SVPA because all the required elements were proven. Appellant was convicted of sexually violent offenses under the SVPA based on his conviction in New Jersey of second-degree sexual assault. See N.J.S.A. 30:4-27.26. His convictions were based on his sexual assaults on young boys aged six to fifteen for more than a two-year period.

All the doctors diagnosed appellant with a pedophilic disorder. The court credited the State doctors' testimony that found appellant also suffered from a

personality disorder, and that the two disorders, in combination, predisposed appellant to reoffend in a sexually violent manner within the meaning of the SVPA. Dr. Greenfield did not find that appellant had a personality disorder, but the court was permitted to agree with one expert over another. See Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (recognizing the fact-finder's prerogative to accept the opinions of certain testifying experts and to reject competing opinions of an opposing expert).

The record supported the court's conclusion that appellant's mental abnormality or personality disorder makes it highly likely that he will not control his sexually violent behavior and will reoffend. All the doctors formed their opinions based on their interviews, testing and review of the records that included the ADTC treatment summary. This record was admitted in evidence without objection. The records supported the conclusions of Drs. Cidambi and Dunaev that appellant's understanding of his offending dynamic and relapse prevention concepts were "superficial" although he had been in treatment for twenty years. He continued to show manipulative behavior. Both doctors concluded, based on their interviews and records, that he was highly likely to reoffend as a result of his psychiatric disorders.

13

A trial judge in an SVPA commitment hearing may consider hearsay in order to assess the credibility of expert testimony, if the expert has based his opinion on such evidence and the evidence is "of a type reasonably relied upon by experts in the particular field." N.J.R.E. 703; In re Civil Commitment of A.X.D., 370 N.J. Super. 198, 201-02 (App. Div. 2004). An expert is permitted to rely upon hearsay information in forming an opinion with respect to an individual's mental condition. In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 612 (App. Div. 2003) (citing State v. Eatman, 340 N.J. Super. 295, 302 (App. Div. 2001)). The judge may not consider such hearsay statements as substantive evidence unless the statements come within an exception to the hearsay rule. See In re Civil Commitment of G.G.N., 372 N.J. Super. 42, 56 (App. Div. 2004). We are satisfied from our review of the record that the judges adhered to these principles in rendering their decisions in this case. The pertinent query is whether "the opinion ultimately rendered . . . is that of the witness based on his or her own evaluation of the committee, prior offenses, and objective test data." In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 492 (App. Div. 2005).

The record here is clear that Drs. Cidambi and Dunaev formed their own opinions based on an assessment of information of the type relied upon by

experts in their field. The court's reference to the ADTC report was made in evaluating the credibility of the expert witnesses and not as substantive evidence.

Dr. Greenfield did not recommend appellant's immediate release without further planning and conditions. He did not detail what that would entail. He did not address the Stable-2007, which showed high results. Where there was substantial evidence in the record, the court was permitted to credit the opinions of the other experts, who concluded that appellant should be civilly committed because he meets the definition under the SVPA of a sexually violent predator and is highly likely to reoffend if released. Accordingly, there is no basis for reversal on this record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION