# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3608-18T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
T.W., SVP-131-00.

_____

Submitted February 25, 2020 – Decided April 17, 2020

Before Judges Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-131-00.

Joseph E. Krakora, Public Defender, attorney for appellant T.W. (Susan Remis Silver, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent State of New Jersey (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, Deputy Attorney General, on the brief).

PER CURIAM

T.W. is a sixty-four-year-old man who has been civilly committed since 2000 under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. He appeals from a judgment entered on April 4, 2019, following a

remand for a new commitment review hearing. T.W. argues that his commitment should be reversed because it was based on hearsay concerning charges from 1983 that never resulted in sexual convictions. The trial court found that the sources of information relied on by the State's experts, including police reports from 1983, were the type of information generally relied upon by such experts and, therefore, the court could rely on the opinions offered by the State's experts. We discern no reversible error in that decision and affirm.

I.

We have previously summarized T.W.'s criminal background as follows:

> In July 1974, T.W. was arrested and charged in connection with a series of attacks against six different women committed between March and May 1974. All six of those events involved forced entries into homes. In two of the situations, T.W. forcibly raped two women, and in three different situations he physically assaulted three other victims. T.W. plead guilty to two counts of rape, attempted rape, three counts of breaking and entering, and assault. He was sentenced to thirty years in prison. In January 1983, T.W. was paroled.
>
> In September 1983, he was arrested and charged with three attacks on three separate women committed in August 1983. The State dismissed the sexual assault charges related to two of the attacks. Thereafter, in 1984, T.W. was convicted of robbery stemming from the charge that he attacked a woman in a parking lot and unsuccessfully tried to pull her into a stairwell. The victim escaped, and T.W. stole her purse. He was sentenced to twenty years in prison.

2

In 2000, T.W. was civilly committed under the SVPA. Since 2000, he has received a series of review hearings and his commitment has been continued. We have reviewed and affirmed several of the judgments continuing T.W.'s civil commitment.

Following a review hearing and continued commitment in 2016, T.W. appealed arguing that his commitment was based on unreliable testimony from his wife, K.W. In 2004, K.W. testified that T.W. had admitted to her that he had committed additional rapes in 1983. In September 2016, however, K.W. recanted that testimony in a certification. In light of that recantation, we remanded the matter to the trial court to take testimony from K.W. Unfortunately, K.W. passed away before she could testify, and the trial court did not conduct a new hearing. Instead, based on the record that had been developed at the 2016 hearing, and for reasons stated on the record during the October 17, 2017 decision on remand, the trial court continued T.W.'s commitment.

In November 2018, we again remanded the matter and directed that a hearing be conducted, that the State submit new expert reports, and that if the new experts were not relying on the recanted testimony of the deceased wife,

3

they needed to identify the specific information they were relying on concerning the events in 1983.

The re-hearing was conducted on April 1 and 4, 2019, before a new judge who had not been involved in prior commitment hearings concerning T.W. At the 2019 hearing, the State presented testimony from three witnesses: C.M., the victim of the robbery committed in August 1983, and expert testimony from Howard Gilman, M.D., a psychiatrist, and Zachary Yeoman, Psy.D, a psychologist. T.W. presented testimony from Dr. Barry Zakireh, Ph.D., a psychologist, and Hawaiian Thompson-Epps, an investigator.

Dr. Gilman evaluated T.W. and reviewed his records, including his criminal record. Dr. Yeoman was a member of the treating committee that evaluated T.W.'s progress in 2018 while T.W. was in the Sexual Treatment Unit (STU). Dr. Gilman did not consider the testimony or recantation of T.W.'s deceased wife and Dr. Yeoman placed no weight on that testimony. Dr. Gilman administered the Static-99R tool and scored T.W. as a six, which reflected an above average risk of sexual recidivism. Dr. Yeoman reviewed a report of another doctor who had also scored T.W. as a six on the Static-99R.

Both of the State's experts relied on T.W.'s sexual convictions in 1974 and his assaults of three women in 1983. In that regard, both experts testified that

they reviewed police and presentence reports, including witness statements, from 1983 and believed that all three assaults were sexual in nature. Dr. Gilman and Dr. Yeoman both acknowledged that T.W. was not convicted of a sexual assault in 1983, but they testified that they relied on the police records, as well as other treatment materials, in considering the assaults as sexual in nature.

Dr. Gilman diagnosed T.W. with sexual sadism, voyeuristic disorder, and anti-social personality disorder. He opined that T.W. was at high risk of sexually reoffending. Dr. Yeoman also opined that T.W. had a high risk of sexually reoffending if released.

C.M. was the victim of the robbery T.W. committed in August 1983. She testified that T.W. had grabbed her as she left her office building, put his hand over her mouth, and dragged her down some stairs. C.M. bit T.W.'s hand, she screamed, he released her, he grabbed her pocketbook, and he ran away. C.M. reviewed and confirmed the accuracy of the police report of her robbery.

Dr. Zakireh, T.W.'s expert, diagnosed T.W. with voyeuristic disorder and anti-social personality disorder. He opined that the voyeuristic disorder did not predispose T.W. to engage in violent sexual offenses. Dr. Zakireh disagreed with the diagnosis of T.W. as someone who suffered from sexual sadism. Accordingly, Dr. Zakireh opined that T.W. was not highly likely to sexually

reoffend and was likely to comply with parole supervision and treatment if released.

After hearing the testimony of the various witnesses, and reviewing the documents presented at the hearing, the trial court continued T.W.'s commitment and explained the reasons for its ruling on the record on April 4, 2019. Initially, the court noted that the State's two experts were not relying on the testimony from T.W.'s deceased wife. The court then found that all of the State's witnesses were credible. In that regard, the court found that Dr. Gilman and Dr. Yeoman were more credible than Dr. Zakireh.

The court also assessed Dr. Gilman's and Dr. Yeoman's reliance on the assaults in 1983. The court recognized that T.W. was not convicted of a sexual crime but noted that the records demonstrated that T.W. was positively identified as the attacker in all three of the 1983 incidents. Relying on C.M.'s testimony, the police reports, and witness statements from 1983, the court found that it was reasonable for Dr. Gilman and Dr. Yeoman to base their opinions, at least in part, on the sexual nature of the 1983 incidents. In that regard, the court noted that psychiatrists and psychologists can rely on hearsay in formulating their opinions.

6

The court also noted that neither Dr. Gilman nor Dr. Yeoman relied only on the 1983 incidents. Instead, both had reviewed T.W.'s extensive criminal record and his treatment history. In addition to the criminal record, both doctors relied on multiple evaluations conducted while T.W. was civilly committed since 2000.

The trial court then found that the State had presented clear and convincing evidence that T.W. had been convicted of sexually violent offenses in 1974, he suffered from mental abnormalities or personality disorders, and that he was highly likely to sexually reoffend if released. In making those findings, the trial court accepted Dr. Gilman's diagnosis of T.W. as having voyeuristic disorder, anti-social personality disorder, and sexual sadism.

## II.

T.W. now appeals from the April 4, 2019 judgment continuing his civil commitment. He argues that his commitment order should be reversed because it was improperly based on hearsay concerning dismissed charges from 1983.

Initially, we note that the hearing conducted in April 2019 complied with our remand instructions. It is undisputed that the State's experts did not consider or rely on testimony from T.W.'s deceased wife. Instead, T.W. now focuses his challenge to the State's experts considering the 1983 events as sexual in nature.

7

Our review of a trial court's decision in a commitment proceeding under the SVPA is "exceedingly narrow." In re Civil Commitment of W.X.C., 407 N.J. Super. 619, 630 (App. Div. 2009) (first citing In re Civil Commitment of J.M.B., 395 N.J. Super. 69, 89 (App. Div. 2007), aff'd, 197 N.J. 563 (2009); then citing In re Civil Commitment of V.A., 357 N.J. Super. 55, 63 (App. Div. 2003)). Further, we "must give the 'utmost deference' to the reviewing judge's determination of the appropriate balancing of societal interest and individual liberty." Ibid. (quoting In re Commitment of J.P., 339 N.J. Super. 443, 459 (App. Div. 2001)). Modification is only proper on appeal when the "record reveals a clear abuse of discretion." Ibid. (citing J.M.B., 395 N.J. Super. at 90). Accordingly, a reviewing court has a responsibility to "canvass the record, inclusive of the expert testimony, to determine whether the findings made by the trial judge were clearly erroneous." Ibid. (citing In re D.C., 146 N.J. 31, 58-59 (1996)).

> At the commitment hearing, the State must establish three elements: (1) that the individual has been convicted of a sexually violent offense; (2) that he [or she] suffers from a mental abnormality or personality disorder; and (3) that as a result of his [or her] psychiatric abnormality or disorder, "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend . . . ."

A-3608-18T5

> [In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014) (citations omitted) (quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)).]

In certain circumstances, hearsay may be relied on by experts if the information is of a type "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." State v. Torres, 183 N.J. 554, 576 (2005) (quoting N.J.R.E. 703); In re Commitment of A.X.D., 370 N.J. Super. 198, 201-02 (App. Div. 2004) (citations omitted). Accordingly, an expert is permitted to rely upon hearsay information in forming an opinion with respect to an individual's mental condition. In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 612 (App. Div. 2003) (first citing N.J.R.E. 703; then citing State v. Eatman, 340 N.J. Super. 295, 302 (App. Div. 2001)).

Our Supreme Court also has determined that police and presentencing reports can be relied on by testifying experts in SVPA commitment hearings because such documents are "the type of evidence reasonably relied on by psychiatrists in formulating an opinion as to an individual's mental condition." In re Commitment of J.M.B., 197 N.J. 563, 597 n.9 (2009) (citations omitted); see also J.H.M., 367 N.J. Super. at 612 (holding that a "psychiatrist is permitted to testify about a defendant's prior criminal history in order to offer an opinion about a defendant's mental condition" (citing Eatman, 340 N.J. Super. at 302)).

Similarly, an expert in a commitment hearing can consider hearsay in STU treatment reports, provided the expert testifies that such reports are "of a type reasonably relied upon by experts in the particular field." N.J.R.E. 703; A.X.D., 370 N.J. Super. at 201-02 (citing State v. Vandeweaghe, 351 N.J. Super. 467, 480 (App. Div. 2002)).

Here, Dr. Gilman relied on a variety of information in forming his views as to T.W.'s mental disorders. In that regard, he relied on T.W.'s convictions from 1974, his criminal record, evaluations conducted during T.W.'s civil commitment, and his own evaluations of T.W. In forming his diagnosis, Dr. Gilman relied, in part, on the three incidents in 1983 and formed the view that they were sexual in nature. He testified that he read the police and presentence reports, including witness statements, and grand jury testimony. Neither Dr. Gilman nor the trial court relied on the 1983 incidents as establishing that T.W. committed sexual crimes; rather, they relied on that information in forming and crediting Dr. Gilman's mental assessment of T.W. Given that the 1983 incidents were part of a number of different materials considered by Dr. Gilman and the trial court, we discern no reversible error.

In that regard, we note that T.W.'s counsel stipulated that the factual background in Dr. Gilman's report constituted appropriate sources for the doctor

to rely upon under N.J.R.E. 703. That background information included the details of T.W.'s 1983 charges. Similarly, T.W.'s counsel stipulated that the sexual offense history in the 2018 treatment report was an appropriate source for experts to rely upon. That history also included details of T.W.'s 1983 charges.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION