

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-14-2005

# USA v. Hinton

Precedential or Non-Precedential: Precedential

Docket No. 03-3803

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Hinton" (2005). *2005 Decisions.* Paper 477.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/477

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-3803

———————

UNITED STATES OF AMERICA

v.

THOMAS HINTON
aka JAMES KIRKLAND

Thomas Hinton,
                                    Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 02-cr-00769
(Honorable Eduardo C. Robreno)

———————

Argued November 18, 2004

Before:  SCIRICA, *Chief Judge,*
McKEE and CHERTOFF[*], *Circuit Judges*

(Filed   September 14, 2005 )

EDWARD C. MEEHAN, JR., ESQUIRE (ARGUED)
1420 Walnut Street, Suite 911
Philadelphia, Pennsylvania 19102
        Attorney for Appellant

MAUREEN BARDEN, ESQUIRE (ARGUED)
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106
        Attorney for Appellee

---

OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

Thomas Hinton appeals from his conviction for possession with intent to distribute cocaine base in violation of

---

[*]Judge Chertoff heard oral argument in this case but resigned prior to the time the opinion was filed.  The opinion is filed by a quorum of the panel.  28 U.S.C. § 46(d).

2

21 U.S.C. § 841(a)(1). Hinton contends the District Court erroneously permitted the Government to offer as evidence out-of-court statements made by a witness he never had an opportunity to cross-examine, depriving him of his Sixth Amendment right to confrontation.

This case requires us to determine whether the challenged statements were "testimonial," as that term is used in *Crawford v. Washington*, 541 U.S. 36 (2004), a decision handed down after trial but during the pendency of this appeal. We hold that certain statements were improperly admitted, but that any error was harmless. We will affirm the conviction and vacate his sentence.

I.

Around 4 a.m. on the morning of August 5, 2001, a 911 operator received a call from a man later identified as Thomas Mack. Mack claimed that an unknown person brandishing a gun confronted him on the 600 block of North Brooklyn Street in West Philadelphia and warned him not to return to the area.

Police Officers Brian Dillard and Albert Cain were dispatched to the called-in location. Mack joined the officers in their squad car and they drove around the area looking for the assailant. On the block where Mack had been threatened, they spotted Hinton and an unknown companion. Mack pointed to the two men and stated "There you go."

The police approached in their vehicle, and the two men immediately fled. Officer Cain left his car in pursuit of Hinton. While giving chase, he observed Hinton drop an object that he later testified appeared to be a gun. Officer Cain eventually caught up with Hinton and arrested him. A subsequent search revealed that Hinton was carrying thirty-seven packets of crack cocaine along with $120, much of it in five-dollar bills. Officers Cain and Dillard searched the area Hinton had fled and found a loaded handgun near where Cain observed him dropping an object. A second handgun was found near the area where Hinton's companion, who was never apprehended or identified, had fled.

Hinton was indicted for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924(c), and possession of a firearm by a convicted felon in violation of 21 U.S.C. § 922(g)(1). Mack did not testify at Hinton's trial. The government never asserted he was unavailable to testify. But the government sought to introduce Mack's statements through the testimony of Officers Dillard and Cain and the 911 recording. Hinton objected, citing the Confrontation Clause of the Sixth Amendment to the Constitution. *See* U.S. Const., amend. VI, cl. 3. The District Court ruled that Mack's statements were admissible under the excited utterance exception to the hearsay rule, *see* Fed. R. Evid. 803(2), but did

not specifically address Hinton's Confrontation Clause argument.

The jury convicted Hinton of possession with intent to distribute cocaine base but acquitted him of both firearms charges. He was sentenced to 216 months in prison. Hinton filed a timely appeal. We exercise jurisdiction under 28 U.S.C. § 1291.

II.

After Hinton's conviction, the Supreme Court decided *Crawford v. Washington*, 541 U.S. 36 (2004). The defendant in *Crawford* was convicted of assault for stabbing a man who allegedly tried to rape his wife. Over the defendant's objections, the trial court permitted the prosecution to play a tape-recorded statement made by the defendant's wife, who was otherwise barred from testifying without her husband's consent under the state's marital privilege. As a result, Crawford was never permitted to cross-examine her about the statements she made in the tape recording. The trial court nonetheless ruled that the statement was admissible, finding it qualified as a statement against penal interest, *see* Wash. R. Evid. 804(b)(3), and did not violate Crawford's Sixth Amendment rights. The Supreme Court reversed the conviction, holding the statements made by Crawford's wife were inadmissible under the Sixth Amendment.

In so doing, the Court partially overruled *Ohio v. Roberts*, 448 U.S. 56 (1980), which had defined the scope of the Confrontation Clause for the previous two decades. Under

5

*Roberts*, out-of-court statements bearing "adequate indicia of reliability" were admissible if they either fell within a "firmly rooted hearsay exception" or possessed other "particularized guarantees of trustworthiness." *Id*. at 66. After canvassing "the historical background of the [Confrontation] Clause," *Crawford* concluded that the *Roberts* test was incompatible with the origins of the right to confrontation. *Crawford*, 541 U.S. at 60. According to *Crawford*, "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* at 50. Just as the Sixth Amendment grants defendants the right to cross-examine those who testify in court, it prohibits the admission of out-of-court testimony unless "the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine." *Id*. at 59.[1]

---

[1] As we held in *United States v. Trala*, testimonial statements are admissible without prior cross-examination if they are not offered for their truth. *See* 386 F.3d 536, 544 (3d Cir. 2004) ("*Crawford* does not apply where the *reliability* of testimonial evidence is not at issue[.]") (emphasis in original). Furthermore, the admission of non-testimonial hearsay is still governed by *Roberts*. *See Crawford*, 541 U.S. at 68 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny

Thus, a "testimonial" statement is inadmissible absent a showing that the declarant is unavailable and the defendant had a prior opportunity for cross-examination, "regardless of whether the statement at issue falls within a firmly rooted hearsay exception or has a particularized guarantee of trustworthiness." *United States v. Hendricks*, 395 F.3d 173, 178-79 (3d Cir. 2005); *see also Crawford*, 541 U.S. at 56 n.7 ("Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse . . . . This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances."). The threshold question in any Confrontation Clause analysis, then, is whether the statement is testimonial.

The Court's use of the term "testimonial" as a limitation on admission of out-of-court statements derives from its definition of a "witness," as that term is used in the Sixth Amendment. The Sixth Amendment grants the accused in a criminal trial the right "to be confronted with the witnesses against him." The term "witnesses," the Court found in *Crawford*, embraces all those who "bear testimony," whether at trial or outside the courtroom. *Crawford*, 541 U.S. at 51 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). "Testimony," in turn, is "[a] solemn

altogether.")

7

declaration or affirmation made for the purpose of establishing or proving some fact." *Id.*

Although the Court expressly declined to "spell out a comprehensive definition" of "testimonial," *id.* at 68, it provided some concrete examples of testimonial evidence. "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68. These examples "are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.*

Without endorsing one specific definition, *Crawford* also referenced three different "formulations of this core class of 'testimonial' statements": 1) "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," *id.* at 51 (*quoting* Br. for Pet'r 23); 2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," *id.* at 51-52 (*quoting White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., concurring)); and 3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *id.* (*quoting* Br. for Nat'l Assoc. of Criminal Def. Lawyers et al. as Amici Curiae 3). These three definitions, the Court found, "all share a common nucleus and then define

the Clause's coverage at various levels of abstraction around it." *Id.*

In the wake of *Crawford*, courts have grappled with the meaning of testimonial hearsay. In *United States v. Hendricks*, we explored the admissibility of surreptitiously recorded conversations involving several defendants and a confidential informant. 395 F.3d 173 (3d Cir. 2005). In that case, the District Court found the statements were "testimonial" and inadmissible. We reversed, finding the statements at issue "neither fall within nor are analogous to any of the specific examples of testimonial statements mentioned by the Court" and "do not qualify as 'testimonial' under any of the three definitions mentioned by the Court." *Id.* at 181. We did not articulate a definition of "testimonial." But we noted that "the very purpose of Title III intercepts is to capture conversations that the participants believe are not being heard by the authorities and will not be available for use in a prosecution." *Id.* As such, we found surreptitiously recorded conversations more similar to "a casual remark" than a "formal statement." *Id.* (quoting *Crawford*, 541 U.S. at 51).

*Hendricks* did not require us to settle upon a definition of testimonial. But underpinning our discussion of surreptitiously recorded conversations was an appreciation of the third formulation of "testimonial" offered by the Court in *Crawford*: "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." In many

9

instances, statements made to authorities for use in investigating and prosecuting a crime constitute the type of statements which lie at the core of the concern expressed by the Confrontation Clause.

In these kinds of cases, we believe application of *Crawford*'s third and broadest formulation of "testimonial" will ensure compliance with the Confrontation Clause. We find the Sixth Circuit's reasoning instructive:

> [This] broader definition "is necessary to ensure that the adjudicative system does not effectively invite witnesses to testify in informal ways that avoid confrontation." The *Crawford* Court found the absence of an oath not to be determinative in considering whether a statement is testimonial. . . . [T]he danger to a defendant might well be greater if the statement introduced at trial, without a right of confrontation, is a statement volunteered to police rather than a statement elicited through formalized police interrogation. One can imagine the temptation that someone who bears a grudge might have to volunteer to police, truthfully or not, information of the commission of a crime, especially when that person is assured he will not be subject to confrontation. . . . If the judicial system only requires cross-examination when someone has formally served as a witness against a defendant,

10

> then witnesses and those who deal with them will
> have every incentive to ensure that testimony is
> given informally.

*United States v. Cromer*, 389 F.3d 662, 674-75 (6th Cir. 2004) (internal citations omitted). Moreover, where an objective witness reasonably anticipates that a given statement will be used at a later trial, that statement is likely testimony in the sense that it is offered to establish or prove a fact. *See Crawford*, 541 U.S. at 51. As such, absent unavailability and a prior opportunity for cross-examination, it must be subjected to the strictures of the Confrontation Clause. *Id*. at 68 ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.")

The Court of Appeals for the Second Circuit has reasoned similarly, finding that "the [*Crawford*] Court would use the reasonable expectation of the declarant as the anchor of a more concrete definition of testimony." *United States v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004). And the Sixth Circuit has adopted a similar definition of testimony: "The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Cromer*, 389 F.3d at 675; *see also United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005) ("We conclude that the 'common nucleus'

11

present in the formulations which the Court considered centers on the reasonable expectations of the declarant. It is the reasonable expectation that a statement may be later used at trial that distinguishes the flippant remark, proffered to a casual acquaintance . . . from the true testimonial statement."); *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005) (finding declarant's positive identification of defendant to be "testimonial" because it was given during a police interrogation, was made to a government officer, and because "any reasonable person would assume that a statement that positively identified possible suspects in a picture of the crime scene would be used against those suspects in either investigating or prosecuting the offense"); *Horton v. Allen*, 370 F.3d 75, 83-84 (1st Cir. 2004) (defendant's private conversation with friend, previously admitted under state-of-mind exception, held to be non-testimonial because it was private, did not involve formalized documents, was not made under examination, and was not made "under circumstances in which an objective person would reasonably believe that the statement would be available for use at a later trial") (quotations omitted).

Accordingly, statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are testimonial.  In the absence of a showing that the declarant is unavailable and that the defendant had an opportunity for cross-examination, admission of such statements will violate the Confrontation Clause of the Sixth Amendment.

12

III.

Hinton contends that Mack's identification of Hinton while in the police cruiser was testimonial under *Crawford*. We agree. Mack's statement falls within *Crawford*'s third formulation of testimony—statements that would lead an objective witness reasonably to believe the statement would be available for use at trial.

Mack positively identified Hinton as his assailant to two police officers, while riding in a police cruiser in pursuit of the suspect. Mack made the statement with knowledge that the officers were acting in their official capacity and investigating the reported crime. An "objective witness" reasonably would have believed that his identification (and accusation) to the police in this context served the purpose of incriminating Hinton and would be available for use at trial.[2] *Cf. Pugh*, 405 F.3d at

---

[2]*See Lopez v. State*, 888 So. 2d 693, 700 (Fl. Dist. Ct. App. 2004) (holding that accusation made by victim to police at the scene of the crime was testimonial because declarant "surely must have expected that the statement he made to [the officer] might be used in court against the defendant. He knew [the officer] was a policeman who was on the scene in an official capacity to investigate a reported crime."). Other state courts have held that statements made at the scene of the crime are not necessarily testimonial. *See, e.g., Hammon v. State*, 829 N.E.2d 444, 446 (Ind. 2005) (holding that "statements to investigating officers in response to general initial inquiries are

13

399 (holding that positive identification of accused is testimonial).

Mack's statement constitutes testimony under *Crawford.* Because there was no showing that Mack was unavailable and that Hinton had an opportunity to cross examine him, its admission was error.

IV.

Hinton also challenges the admission of Mack's 911 telephone call, which was played for the jury.[3] Hinton argues the telephone call is testimonial under *Crawford* and should not have been admitted.

The most likely reason for a 911 call is for health or safety, seeking assistance for the caller or other parties. But

nontestimonial but statements made for purposes of preserving the accounts of potential witnesses are testimonial"); *Commonwealth v. Gray*, 867 A.2d 560, 577 (Pa. Super. Ct. 2005) (holding that excited utterances made to the police by witnesses at the scene of the crime were not testimonial because the declarant is not subject to police interrogation and volunteers the information in effort to remedy a "perceived emergency, not to create a record against another for use in a future prosecution").

[3]As a practical matter, the 911 call was less significant in light of Mack's live testimony in the police cruiser.

14

there may be other reasons to make a 911 call, such as providing information to aid in the investigation and potential prosecution of a crime.

We find less helpful *Crawford*'s third formulation of "testimonial" in the context of Mack's call to 911. Generally 911 calls do not provide detailed information about the caller. Often 911 callers remain anonymous, confounding the court's ability to draw conclusions about whether an objective witness in similar circumstances would have intended to bear testimony. To the extent information is known, it is often that the caller is the victim of a crime, seeking police assistance. *See, e.g., Leavitt v. Arave*, 383 F.3d 809, 830 n.22 (9th Cir. 2004) (holding 911 call non-testimonial where the victim "sought [the police's] help in ending a frightening intrusion into her home").[4] This was the case here—Mack reported that someone had pulled

---

[4]In exceptional circumstances there may be specific information bearing upon the caller's motive to bear testimony that might make application of *Crawford*'s third formulation appropriate. *See, e.g., Cromer*, 389 F.3d at 675 ("One can imagine the temptation that someone who bears a grudge might have to volunteer to police, truthfully or not, information of the commission of a crime, especially when that person is assured he will not be subject to confrontation."). We find such circumstances absent in this case.

15

a gun on him, gave a description of his assailant, and asked for police assistance.[5]

Nor do the other *Crawford* formulations of "testimonial" seem to fit Mack's statements. Mack's statements made during the 911 call neither fall within nor are analogous to any of the specific examples of testimonial statements mentioned in *Crawford*. Mack's statements in his call were neither prior testimony at a preliminary hearing, prior testimony before a grand jury, prior testimony at a former trial, nor a police interrogation. *See Crawford*, 541 U.S. at 68.

In our view, Mack's statements during the 911 call were non-testimonial and their admission, therefore, was not error.

V.

Our conclusion, however, does not end the analysis. Because the decision to admit Mack's statements in the police cruiser was "simply an error in the trial process itself" rather than a "structural defect affecting the framework within which

---

[5]In a recent decision, the Court of Appeals for the Eighth Circuit held that statements made during a 911 call were non-testimonial. *See United States v. Brun*, 416 F.3d 703, 707 (8th Cir. 2005). The court based its decision, in part, on observations about statements in 911 calls: "[they occur] moments after the criminal offense and under the stress of that event . . . [and] do not fit within the definitions or the examples of 'testimonial' statements." *Id*. (quotations omitted).

the trial proceeds," we may affirm if the error was harmless. *See Arizona v. Fulminante*, 499 U.S. 279, 310 (1991); *see also United States v. Henry*, 282 F.3d 242, 251 (3d Cir. 2002) (harmless error analysis appropriate when defendant objects at trial); Fed. R. Crim. P. 52(a).

As the government points out, Hinton was acquitted on both firearms charges. Therefore, we must determine what impact the erroneous admission of Mack's statements had on the jury's decision to convict Hinton for drug possession with intent to distribute. If we conclude beyond a reasonable doubt that the jury verdict on the charge for possession with intent to distribute would have been the same—had Mack's statements not been admitted—then we must affirm the conviction.

Mack never stated that he had observed drugs on Hinton or suspected him to be engaged in selling drugs. The only evidence presented was that Hinton, when arrested, was found with thirty-seven packets of crack cocaine as well as numerous five-dollar bills. A government expert, Philadelphia Police Detective Christopher Lee, testified that such a large number of packets is strong evidence of dealing rather than simple possession, and that five dollars is the going price for a packet of crack.

Nonetheless, Hinton argues that, because Detective Lee testified that sellers of drugs frequently carry firearms, Mack's testimony may have contributed to the jury's decision to convict Hinton for drug possession with intent to distribute rather than

17

simple possession. We disagree. There was credible evidence that Hinton was carrying a gun, as two separate firearms were found at the scene and Officer Cain testified that he observed Hinton drop an object that appeared to be a gun.

Furthermore, we do not believe the same jury that acquitted Hinton of the two gun charges nonetheless convicted him of drug possession with intent to distribute based on its belief that Hinton was carrying a gun. As Detective Lee testified, gun possession is simply one indicator of drug dealing. Other evidence provided much stronger support for the prosecution's contention that Hinton was a drug seller rather than a mere drug user. Thirty-seven packets of cocaine together with $120 in small bills were more than sufficient to prove beyond a reasonable doubt that Hinton possessed drugs with the intent to distribute. Therefore, admission of Mack's statements was harmless error.

## VI.

Hinton challenges his sentence under *United States v. Booker*, 543 U.S. - -, 125 S. Ct. 738 (2005). Having determined that the sentencing issues Hinton raises are best determined by the District Court in the first instance, we will vacate the sentence and remand for resentencing in accordance with *Booker*.

18

## VII.

For the reasons set forth, we will affirm Hinton's judgment of conviction.  We will vacate his sentence and remand for resentencing.