897 A.2d 1119 (2006)
385 N.J. Super. 544
STATE of New Jersey In the Interest of J.A., Juvenile-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 6, 2006.
Decided May 23, 2006.
*1121 Yvonne Smith Segars, Public Defender, attorney for juvenile, J.A. (Susan Brody, Assistant Deputy Public Defender, of counsel and on the brief).
James F. Avigliano, Passaic County Prosecutor, attorney for State of New Jersey (Christopher W. Hsieh, Senior Assistant Prosecutor, of counsel and on the brief).
Before Judges CUFF, PARRILLO and GILROY.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Following a bench trial, juvenile, J.A., was adjudicated delinquent of an act which, if committed by an adult, would constitute second-degree robbery, N.J.S.A. 2C:15-1. He was sentenced to a two-year term at the Training School for Boys at Jamesburg. J.A. appeals, arguing that it was reversible error to admit the hearsay statement of a non-testifying eyewitness. We disagree, and affirm.
According to the State's proofs, on February 10, 2005, shortly before 9:30 p.m., J.C. exited a bus at 28th Street in Paterson and began walking home, carrying a purse and a book bag. She was approached from behind by two juveniles, later identified as J.A. and H.A.[1], one of whom grabbed her shoulder. H.A. grabbed her purse, forcing her down to the ground and injuring her knees. While lying on the curb screaming for help, J.C. saw H.A. snatch the purse from her shoulder. She then observed H.A. flee with his cohort.
Responding to the victim's screams, three young women approached and helped J.C. by lending her a cell phone to call her son and by flagging down a police car. Soon, backup police arrived, including Officers Belton and Semmel, who were responding to a police radio broadcast of a purse snatching at 20th Avenue and East 31st Street. J.C. informed the officers that her purse was "snatched by two individuals," one of whom wore a red-hooded sweatshirt and black jacket. The responding officers began patrolling the area for suspects.
Unbeknownst to J.C. at the time, an eyewitness had observed the robbery and actually followed the fleeing suspects. *1122 While in pursuit, the witness telephoned the police and gave a description of the suspects, which was then broadcast over the police radio. Office Semmel was dispatched to the witness' location and within two minutes of the radio transmission, encountered the witness near Public School 30, approximately two blocks from the robbery scene. The witness indicated the suspects' direction of travel and stated that two Hispanic teenagers, one wearing a white and blue jacket, and the other one wearing a red jacket and glasses, knocked the victim down.
As a result of this information, Officer Semmel located J.A. and H.A. walking down the street. The juveniles matched the witness' earlier description, as J.A. had a red jacket and glasses and H.A. wore a white and blue jacket. The juveniles were brought back to the robbery scene where J.C. identified H.A. as the one who snatched her purse, but was unable to identify J.A. as the other assailant.
J.A. and H.A. were arrested and given their Miranda[2] rights. H.A. led Officer Semmel to the purse, which was in a rear lot behind a gym door at Public School 30. The purse was located next to its contents, which were spilled on the ground; however, the victim's money, $18, was missing. A search of the two juveniles disclosed a total of $18 between them.
At trial, the victim and several police officers testified for the State. The State did not produce the eyewitness, who apparently refused to appear to testify. Consequently, Officer Semmel was permitted to testify as to the statements conveyed to him by the witness. The juvenile did not call any witnesses. In summation, defense counsel argued that J.A. was merely present at the scene, but had not been an accomplice to the robbery.
On appeal, J.A. contends that the judge erred in admitting the hearsay statements of the eyewitness as "present sense impressions" or "excited utterances" under N.J.R.E. 803(c)(1) and (2) respectively, and that the admission of such testimony violated J.A.'s Sixth Amendment right to confrontation under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We disagree.

(i)
N.J.R.E. 803(c) permits the admission of certain extra-judicial statements of a declarant as substantive evidence regardless of the availability of the witness. Two such exceptions allow for the declarant's hearsay statements as present sense impressions, N.J.R.E. 803(c)(1), and excited utterances, N.J.R.E. 803(c)(2). Both exceptions make admissible statements of "observation" as well as statements "descri[bing] or expla[ining]" an event or condition. N.J.R.E. 803(c)(1). Thus, a present sense impression is:
A statement of observation, description, or explanation of an event or condition made while or immediately after the declarant was perceiving the event or condition and without opportunity to deliberate or fabricate.
[Ibid.]
Somewhat related is an excited utterance, defined as:
A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition and without opportunity to deliberate or fabricate.
[N.J.R.E. 803(c)(2).]
These rules are based on the premise that the present sense impression formed from perceiving an event or condition *1123 as it unfolds, or the "`[e]xcitement caused by the observation of a startling event[,] ensures the reliability of a spontaneous statement about it made at or near the time of the event's occurrence.'" In re Registrant, C.A., 146 N.J. 71, 98, 679 A.2d 1153 (1996) (quoting Biunno, Current N.J. Rules of Evidence, comment 10 on N.J.R.E. 803(c)(2) (1994-95)); State v. Burris, 357 N.J.Super. 326, 332, 815 A.2d 481 (App.Div.2002) (hearsay testimony by witnesses who overheard telephone conversation between victim and defendant where victim stated "`don't threaten me,'" and implicit hearsay threat made by defendant constituted admissible present sense impressions), certif. denied, 176 N.J. 279, 822 A.2d 608 (2003). In fact, N.J.R.E. 803(c)(1) liberalizes the traditional exception (see Evid. R. 63(4)(a)) by admitting statements of present sense impressions made "immediately after" perceiving the relevant event or condition. Of course, as in the case of excited utterances, N.J.R.E. 803(c)(2), statements made after the event must be so close to the event as to exclude the likelihood of fabrication or deliberation. This requirement is expressed by the qualification "without opportunity to deliberate or fabricate," common to both rules.
The factors to be considered in determining whether the declarant had an "opportunity to deliberate or fabricate" include "`the element of time, the circumstances of the [incident], the mental and physical condition of the declarant, the shock produced, [and] the nature of the utterance....'" State v. Branch, 182 N.J. 338, 360, 865 A.2d 673 (2005) (quoting Riley v. Weigand, 18 N.J.Super. 66, 73, 86 A.2d 698 (App.Div.1952)). With respect to the amount of time elapsed, it is clear that contemporaneous or nearly contemporaneous statements will qualify. Thus, for purposes of N.J.R.E. 803(c)(1), it has been determined that a telephoned statement to police by an informant, who insisted upon remaining anonymous, made while witnessing an event described in the statement, may be "so inherently reliable as to be admissible at trial as an exception to the hearsay rule." State v. Marsh, 162 N.J.Super. 290, 299, 392 A.2d 672 (Law Div.1978), aff'd sub nom. State v. Williams, 168 N.J.Super. 352, 403 A.2d 28 (App.Div.1979).
As previously noted, however, neither rule requires the statement to have been made contemporaneously with the event being described nor even, in the case of excited utterances, immediately after the event causing the nervous excitement. See State v. Long, 173 N.J. 138, 159-60, 801 A.2d 221 (2002); State v. Baluch, 341 N.J.Super. 141, 182, 775 A.2d 127 (App. Div.) (stating "that the determinative element is not the precise amount of time which elapsed between the event and the statement, but rather whether the facts and circumstances reasonably warrant the inference that the declarant was still under the stress of excitement caused by the event."), certif. denied, 170 N.J. 89, 784 A.2d 721 (2001). In the case of excited utterances, the requirement is that the statement be made "`in reasonable proximity to the event,'" State v. Rivera, 351 N.J.Super. 93, 100, 797 A.2d 175 (App.Div. 2002) (quoting Evid. R. 63(4)(b)), aff'd o.b., 175 N.J. at 612, 818 A.2d 1284 (2003), be "`truly spontaneous[,] and made solely under the stress of excitement.'" State v. Lazarchick, 314 N.J.Super. 500, 522, 715 A.2d 365 (App.Div.) (quoting Biunno, supra, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 803(c)(2)), certif. denied, 157 N.J. 546, 724 A.2d 804 (1998); State v. Williams, 106 N.J.Super. 170, 172, 254 A.2d 538 (App.Div.), certif. denied, 55 N.J. 78, 259 A.2d 228 (1969), cert. denied, 397 U.S. 1057, 90 S.Ct. 1405, 25 L.Ed.2d 675 (1970).
*1124 Thus, statements made by eyewitnesses to a car accident some twenty minutes after it occurred were admissible where "[t]here was more than ample evidence to conclude that the witnesses were still under the stress of the event...." Truchan v. Sayreville Bar & Rest., Inc., 323 N.J.Super. 40, 50, 731 A.2d 1218 (App.Div. 1999). Likewise, a delay of fifteen minutes between the occurrence of the event and the statement sought to be introduced is not necessarily too long a period to bar admission of the statement under N.J.R.E. 803(c)(2). See Atamanik v. Real Estate Mgmt., Inc., 21 N.J.Super. 357, 91 A.2d 268 (App.Div.1952). In Lazarchick, supra, 314 N.J.Super. at 524, 715 A.2d 365, the statement of an assault victim to his mother when he arrived home not more than an hour after the attack was ruled admissible. Similarly, in State v. Swint, 328 N.J.Super. 236, 246-247, 255, 745 A.2d 570 (App.Div.), certif. denied, 165 N.J. 492, 758 A.2d 651 (2000), the court held that statements about the identity of his assailants made by the victim of a kidnapping, assault, and torture approximately one hour after he escaped from the site of the assault to his brother's home were admissible under N.J.R.E. 803(c)(2).
Of course, we are mindful of the caution in Branch, supra, not to give too broad a reading to the excited utterance exception when a declarant is available and does not testify. 182 N.J. at 370, 865 A.2d 673.[3] However, Branch is readily distinguishable from this case. There, the Court ruled inadmissible a child-witness' distinctive description of a burglar to an inquiring police officer. Id. at 367, 865 A.2d 673. The Court stressed that although the non-testifying witness' statement related to a "startling event" and was made while still "under stress of excitement caused by the event," it was not rendered "without opportunity to deliberate." Id. at 365, 865 A.2d 673. In the twenty-minute interval following the burglary incident, the child had spoken at separate times to her mother and another police officer before answering specifically framed questions asked by the investigating detective. Id. at 366, 865 A.2d 673. The narrative that was elicited included a description of the intruder's gap in his teeth and dirty hands, information not spontaneously given earlier to the witness' mother and other police officer. Ibid.
In contrast here, the eyewitness had just observed what may reasonably be considered a startling eventtwo individuals knocking a woman down and snatching her purse. His reaction was spontaneous and coincident with the occurrence, leaving no pause for premeditation. Although the actual robbery was relatively short in duration, the episode continued as the witness followed the assailants for two blocks within a period of no more than two minutes, during which time he simultaneously reported the events and characters as he perceived them to be. Shortly thereafter, when the witness encountered Officer Semmel, he recounted the events that had just transpired in his presence and described the suspects he was still in the process of pursuing. Although defendant makes much of the fact that the "precise length of time is unknown," the fact remains that the inability to specify "the exact amount of time which elapsed between" the event and the resulting utterance *1125 can be overcome by evidence tending to show that the period was brief and that the declarant's excited state was continuing. State v. Williams, 214 N.J.Super. 12, 518 A.2d 234 (App.Div.1986). See also State v. Bass, 221 N.J.Super. 466, 483, 535 A.2d 1 (App.Div.1987), certif. denied, 110 N.J. 186, 540 A.2d 182 (1988). This was clearly the case here. Consequently, we find the hearsay statements of the non-testifying eyewitness admissible either as a present sense impression under N.J.R.E. 803(c)(1), or an excited utterance under N.J.R.E. 803(c)(2).

(ii)
J.A. nevertheless argues that admission of the hearsay statements violated his Sixth Amendment right to confrontation as interpreted by Crawford, supra. That case holds that hearsay evidence that is "testimonial" may not be admitted against a criminal defendant unless the declarant is unavailable and defendant has had a prior opportunity to cross-examine. Crawford, supra, 541 U.S. at 59, 124 S.Ct. at 1369, 158 L.Ed.2d at 197. This is because, as Crawford makes clear, in a criminal prosecution any hearsay permitted under state rules of evidence is also subject to the defendant's Sixth Amendment "`right ... to be confronted with the witness against him.'" Id. at 38, 124 S.Ct. at 1357, 158 L.Ed.2d at 184 (quoting U.S. Const. amend. VI). Thus, Crawford holds that the Sixth Amendment prohibits use of "testimonial" statements without the opportunity to cross-examine.
Although the Supreme Court did not provide a comprehensive definition of "testimonial," it gave examples of the type of statements at the core of the definition, including "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203. As to the latter, Crawford is clear that statements made during official police interrogation are testimonial because they constitute "`formalized testimonial materials'... `made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Id. at 51-52, 124 S.Ct. at 1364, 158 L.Ed.2d at 193 (quoting White v. Illinois, 502 U.S. 346, 365, 112 S.Ct. 736, 747, 116 L.Ed.2d 848, 865 (1992)).
In the wake of Crawford, courts have held that statements made to police "in response to structured police questioning," Id. at 53, n. 4, 124 S.Ct. at 1365 n. 4, 158 L.Ed.2d at 194 n. 4, or contained in a formal statement, such as an affidavit, are "testimonial." See, e.g., Mungo v. Duncan, 393 F.3d 327, 336 (2d Cir.2004) (holding that statements victim made to police after they tracked down suspects, and in response to pointed questioning, were testimonial), cert. denied sub nom., Mungo v. Greene, 544 U.S. 1002, 125 S.Ct. 1936, 161 L.Ed.2d 778 (2005); United States v. Jordan, 357 F.Supp.2d 889, 900-01 (E.D.Va. 2005) (holding that witness's statement to police was testimonial because police asked whether she would be available to testify in court, even though she appeared at police station of her own accord, and told her story with minimal prompting); Hammon v. State, 829 N.E.2d 444, 458 (Ind.) (holding that the affidavit that the witness signed was testimonial), cert. granted, ___ U.S. ___, 126 S.Ct. 552, 163 L.Ed.2d 459 (2005); Commonwealth v. Gonsalves, 445 Mass. 1, 833 N.E.2d 549, 561 (2005). The reasons some courts focus on whether the questioning was "structured" is because "structured questioning ... evidence[s]... a purpose to elicit `testimonial' statements." Hammon, supra, 829 N.E.2d at 453.
Clearly, not all hearsay implicates the Sixth Amendment's core concerns. Crawford, *1126 supra, 541 U.S. at 68, 124 S.Ct. at 1374, 158 L.Ed.2d at 203. Thus, courts have found that spontaneous or volunteered statements to law enforcement officers, or statements that are in response to open-ended or minimal questioning by law enforcement, particularly those at the scene of the crime, are not testimonial. See, e.g., United States v. Brito, 427 F.3d 53, 56, 61 (1st Cir.2005) (holding that 911 call to police that declarant made while in imminent personal danger was not testimonial); Mungo, supra, 393 F.3d at 336 (stating in dicta that victim's identification of defendant immediately after the shooting after a single police question was nontestimonial); United States v. Griggs, 65 Fed.R.Evid. Serv. 1109, 1114-17 (S.D.N.Y. 2004) (holding that spontaneous statement on scene of crime; "Gun! Gun! He's got a gun," was not testimonial); Hammon, supra, 829 N.E.2d at 457 (holding that domestic violence victim's statements to police at the scene as a result of open-ended questions were not testimonial); Gonsalves, supra, 833 N.E.2d at 552 ("statements made [to police officers] in response to questioning ... [used] to secure a volatile scene or establish the need for or provide medical care" are nontestimonial). This is because such statements, when initiated by victims or eyewitnesses, are generally not rendered for the purpose of "bearing witness," or in contemplation of their testimonial use in future legal proceedings. Washington v. Davis, 154 Wash.2d 291, 111 P.3d 844, 850, cert. granted, ___ U.S. ___, 126 S.Ct. 547, 163 L.Ed.2d 458 (2005); People v. Corella, 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770, 776 (2004); State v. Wright, 686 N.W.2d 295, 302 (Minn.Ct.App.2004), aff'd, 701 N.W.2d 802 (2005). And the fact that such statements may be "made without time for reflection or deliberation" ordinarily makes it unlikely that the declarant is focusing on the preservation of evidence to assist in a criminal prosecution rather than simply the communication of information. Hammon, supra, 829 N.E.2d at 453.
Even when the statements are elicited by on-the-spot police questioning, they tend not to be of the same nature as those in response to more formal and official police interrogation. Rather, in such instances the purpose in eliciting the statement is typically not to produce or preserve evidence in anticipation of a potential criminal prosecution, but directed instead to determining in the first instance "whether an offense has occurred, protection of victims or others, or apprehension of a suspect." Id. at 457.
The Court in Branch, supra, did not have to decide whether the detective's questioning was "police interrogation" or the child's responses "testimonial" in the manner understood in Crawford, because the Court, as noted, resolved the case on state evidentiary grounds, finding the statement not an excited utterance. 182 N.J. at 370, 865 A.2d 673. Although not basing its decision on constitutional principles undergirding our Confrontation Clause jurisprudence, 182 N.J. at 368, 865 A.2d 673, the Court nevertheless emphasized "the importance of the role that cross-examination plays in the ascertainment of truth in our criminal justice system[,]" and "the requirements placed by Crawford, supra, on the admission of testimonial evidence ..." Id. at 370-71, 865 A.2d 673.
Recently, the Third Circuit in United States v. Hinton, 423 F.3d 355 (3d Cir. 2005), articulated the test as such: "[S]tatements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are testimonial." Id. at 360. Under this test, the court found as testimonial the victim's identification of defendant while the victim was riding around in the patrol *1127 car with the police looking for the man who had threatened him. Id. at 357. The court reasoned that the victim "made the statement with knowledge that the officers were acting in their official capacity." Id. at 361. In contrast, the court concluded that the other hearsay statement that had been admitted into evidence, the victim's 911 call for help, was non-testimonial, because it seemed to fit none of the formulations of testimonial found in Crawford. Id. at 361-62.
There is no blanket rule for determining whether statements obtained from victims or witnesses from police officers are "testimonial" or non-testimonial. Rather, the determination requires a case-specific, fact-based inquiry. Hammon, supra, 829 N.E.2d at 455. In this regard, courts have invariably stressed the type of statement, the intent of the declarant, or the purpose of the official procedures used to elicit the statement. The approach we adopt considers all these factors in the totality of circumstances that would lead an objective witness to reasonably believe that the statement would be available for use at a later trial.
So tested, we are satisfied that the eye-witness's brief, spontaneous, volunteered communication to the police in this case does not come within Crawford's proscription and, as such, does not offend the Sixth Amendment's Confrontation Clause. The challenged statement was not given in response to "structured police questioning" nor, as we understand the record, with the intent that it be "preserved" for future use in a criminal prosecution against defendant. Rather, it was a report of a crime, rendered to assist law enforcement in the apprehension of a suspect and the protection of the public, rather than any subsequent prosecution.
We perceive nothing in the manner or mode of its making that would render the statement the functional equivalent of testimony. The statement had neither a formal nor official quality. On the contrary, it was made without reflection or deliberation, simultaneous with the witness' perception of the unfolding events, and therefore the focus was clearly on communicating information instead of preserving it. As previously noted, the statement had sufficient indicia of reliability to qualify it as a present sense impression or excited utterance, otherwise worthy of admission. Having found its nature "non-testimonial", we conclude the Sixth Amendment's Confrontation Clause does not require its exclusion.
Affirmed.
NOTES
[1] Co-defendant, H.A., entered a guilty plea on April 13, 2005, just prior to the commencement of J.A.'s trial.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Our State's Constitution's Confrontation Clause, N.J. Const. art. 1, ¶ 10, does not require that the declarant testify or be unavailable as a condition to the admissibility of an excited utterance. Branch, supra, 182 N.J. at 362, 371, 865 A.2d 673. However, noting other states' decisions construing their state constitutions to require the declarant's testimony or unavailability, the Court in Branch referred the matter to the Supreme Court Committee on the Rules of Evidence for further study. 182 N.J. at 371-72, 865 A.2d 673.