NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4609
_____

UNITED STATES OF AMERICA

v.

JOHNNY RAY ROBERTS,
                    Appellant.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 1-08-CR-00056-001)
District Judge:  Honorable Maurice B. Cohill, Jr.
_____

Argued
December 14, 2010
_____

Before:  SLOVITER, GREENAWAY, JR., and STAPLETON, Circuit Judges

(Opinion Filed: March 22, 2011)

Renee Pietropaolo (Argued)
Lisa B. Freeland
Federal Public Defender's Office
Pittsburgh, PA 15222
        Attorneys for Appellant

Donovan Cocas (Argued)
Robert S. Cessar
U.S. Attorney's Office
Pittsburgh, PA 15219
        Attorneys for Appellee

1

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Appellant Johnny Ray Roberts ("Roberts") appeals the District Court's November 24, 2009 Judgment, convicting him of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).[1] Roberts was sentenced to 188 months of imprisonment, to be served consecutively to a previously imposed state sentence. Roberts was also sentenced to three years of supervised release, and a $100 special assessment. Roberts now files this timely appeal. The issues to be resolved here are whether the admission into evidence of a Trace Summary used to show that the gun (or ammunition) traveled in interstate commerce violated Roberts's rights under the Confrontation Clause; and whether it was a discovery violation for the Government to wait until the day of trial to turn over the Trace Summary.

---

[1] Under 18 U.S.C. § 922(g)(1), the government must prove: (1) that a defendant had previously been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that a defendant knowingly possessed a firearm; and (3) that the firearm had been shipped or transported in interstate commerce. United States v. Dodd, 225 F.3d 340, 344 (3d Cir. 2000). 18 U.S.C. § 924(e) states that in the case of a person who violates § 922(g) and has three previous convictions by any court referred to in § 922(g)(1) for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under § 922(g).

For the following reasons, we will affirm the District Court's judgment of conviction.

## I. BACKGROUND

We write primarily for the benefit of the parties and shall recount only the essential facts. On July 27, 2008, Roberts shot a woman in the head and chest with a .22 caliber handgun. An eyewitness contemporaneously described Roberts to the Erie Police, and on August 7, 2008, Officer Christopher Janus apprehended Roberts after a lengthy car chase and foot pursuit. At some point during the foot pursuit, Roberts turned and pointed a large silver handgun at Officer Janus. The officer retreated, and Roberts walked out of sight near a creek. Eventually, Roberts was apprehended. At that time, he was unarmed, with six rounds of .22 caliber hollow-point ammunition in his pocket. All of the ammunition was stamped with "REM," which indicated that it was manufactured by Remington. A number of law enforcement professionals were summoned to the scene, including ATF Agent Thomas Truchanowicz, who was called to help search for the firearm Roberts had pointed at Officer Janus. Roberts had apparently discarded the handgun in a creek, where it was retrieved by Agent Truchanowicz.

Agent Truchanowicz noted that one side of the barrel of the handgun was stamped "READ INSTRUCTION MANUAL, STURM RUGER & CO., SOUTHPORT, CONN. U.S.A." and the other side of the barrel was stamped "RUGER SP101" and ".22 LR CALIBER," along with the serial number of the handgun. The handgun was loaded with six rounds of .22 caliber hollow-point ammunition, stamped "REM." The six bullets in

3

the handgun matched the six bullets found in Roberts's pocket and also fit into the handgun.

In 2009, Roberts was tried and convicted in state court of attempted homicide and other charges, related to the shooting of the woman the previous summer. He was sentenced in state court to 300 to 600 months of imprisonment, with an additional 42-84 months to run consecutively due to other charges.

The grand jury returned a federal indictment charging Roberts with possession of a firearm by a convicted felon,[2] in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Roberts went to trial on the federal charges, once the state proceedings had been concluded. On the morning of trial, Roberts stipulated to possession of the gun and ammunition, but challenged the government's proof that the gun or ammunition had crossed state lines— the interstate commerce element of unlawful possession of a firearm, 18 U.S.C. § 922(g)(1). He also contended that the government could not prove that the gun was a Sturm & Ruger P101 or that the ammunition was manufactured by Remington.

The focal point of Roberts's objection on this appeal is the Trace Summary. Immediately after Roberts's arrest, Agent Truchanowicz submitted a request to the Alcohol, Tobacco and Firearms' ("ATF") National Trace Center seeking a Trace Summary on the gun. Agent Truchanowicz provided the following information to the Trace Center — firearm make, model, serial number, caliber, and the person from whom

---

[2] Roberts was charged with possession of a Ruger model SP 101 .22 caliber revolver and twelve rounds of Remington .22 caliber ammunition.

4

the gun was recovered.  The Trace Summary is the compilation of information about the gun.  Specifically, it confirms the make, model, serial number, and the history of the firearm.  It also provides that the firearm had been manufactured by Sturm Ruger & Company in Southport, Connecticut, shipped to Canton, Ohio, and sold to the last known owner in Pennsylvania.

At trial, the government presented the testimony of Officer Janus, who described the chase and the fact that Roberts had pointed a gun at him.  Next, Officer Michael Suchy testified to booking Roberts, inventorying his personal effects, and finding six .22 caliber rounds of ammunition in his pockets.  Agent Truchanowicz testified extensively on both direct and cross about the Trace Summary.  The District Court admitted the Trace Summary into evidence.  Additionally, Agent Truchanowicz told the jury how he spotted and recovered the .22 caliber revolver from the creek bed and observed the writing on the sides of the gun barrel and on the ammunition.

ATF Senior Special Agent Mark Willgohs testified for the government as a firearms and ammunition expert.[3]  Using the identifying information, including the make and serial number of the gun, provided to him by Agent Truchanowicz, Agent Willgohs researched the gun and prepared a report concluding that the gun was made in either

---

[3]  According to his testimony, Agent Willgohs has been deemed an "Interstate Nexus" expert since 1994 and has been deemed an expert in firearms identification, origin, and classification, in federal court over 25 times.  As part of that training, Agent Willgohs has been to the Sturm & Ruger manufacturing plants in Connecticut and New Hampshire, and has also toured the Remington ammunition plant.

Connecticut or New Hampshire. After physically examining Roberts's gun from the witness stand, Agent Willgohs confirmed that it was a Sturm & Ruger revolver and stated that it was manufactured in either Connecticut or New Hampshire. He also testified that the distinctive "REM" stamp on the ammunition indicated that it was manufactured by Remington in either Connecticut or Arkansas.

Roberts's attorney did not present any witnesses. Defense counsel argued that the revolver was not a Ruger but was a "generic" gun with counterfeit Ruger stamps. He also argued that the ammunition was not made by Remington but, instead, was an off-brand marked with Remington's stamp. Last, he argued that both the gun and the ammunition were made in Pennsylvania, never crossing state lines.[4]

The jury convicted Roberts. During sentencing, the District Court found the Armed Career Criminal Act ("ACCA") was applicable, and the Guidelines range was determined to be between 188 and 235 months of imprisonment. Roberts's attorney asked for leniency on his client's behalf, arguing that in light of the lengthy sentence Roberts received for the July 2008 shooting of the woman, "for practical purposes, there is virtually no chance that he's going to actually serve a day of the sentence that you impose on him." (Supp. App. Vol. II 39). The government countered by arguing that Roberts should receive some sentence because "otherwise, he gets no punishment at all for the conduct involved with threatening to shoot . . . Officer Janus." (Id. at 43).

---

[4] None of the government's witnesses gave testimony to corroborate any of these arguments.

6

Roberts was sentenced to 188 months of imprisonment, the bottom of his advisory Guidelines range, to run consecutively to his state sentences. Roberts filed a timely appeal.

## II.  JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction, pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's final judgment of conviction and sentence. We also have jurisdiction under 18 U.S.C. § 3742(a).

We exercise plenary review over Confrontation Clause challenges. United States v. Trala, 386 F.3d 536, 543 (3d Cir. 2004); United States v. Lore, 430 F.3d 190, 208-09 (3d Cir. 2005). If evidence was admitted in contravention of a defendant's Confrontation Clause rights, we must consider whether the error was harmless beyond a reasonable doubt. See Lilly v. Virginia, 527 U.S. 116, 140 (1999); United States v. Hinton, 423 F.3d 355, 362 (3d Cir. 2005).

A trial court's remedy for a discovery violation, under its supervisory powers, is reviewed for abuse of discretion, while factual findings upon which the decision was based are reviewed for clear error. Gov't of Virgin Islands v. Fahie, 419 F.3d 249, 258 (3d Cir. 2005); United States v. Lee, 573 F.3d 155, 160 (3d Cir. 2009).

## III.  LEGAL STANDARD

*A.   The Confrontation Clause*

7

Pursuant to the Confrontation Clause of the Sixth Amendment to the Constitution of the United States, made applicable to the states through the Fourteenth Amendment, "in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." Md. v. Craig, 497 U.S. 836, 844 (1990). Although the confrontation requirement is not absolute, it is not easy to dismiss. Id. That confrontation requirement may be satisfied when an in-person confrontation is not possible, if the denial of the confrontation is necessary to "further an important public policy and only where the reliability of the testimony is otherwise assured." Id.

B.     *Harmless Error*

If the court concludes that there was error, either in the admission of the Trace Summary or under Rule 16, the error must be reviewed to determine whether it is harmless. Harmless error is "any error, defect, irregularity or variance which does not affect substantial rights." FED. R. CRIM. P. 52(a). An error is harmless when we are left with "a sure conviction that the error did not prejudice the defendant." United States v. Jannotti, 729 F.2d 213, 220 n.2 (3d Cir.), *cert. denied,* 469 U.S. 880 (1984). In Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991), the Supreme Court recognized a distinction between structural defects, which require reversal, and trial errors, which require a reviewing court to engage in harmless error analysis (particularly, when Constitutional error exists). "A trial error is an error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other

8

evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." Id. at 307-08.

C.    *Federal Rule of Criminal Procedure (FED. R. CRIM. P.) 16*

Under FED. R. CRIM. P. 16(a)(1)(E) and 16(a)(1)(F), the government is required to turn over: (1) documents within the government's possession, custody, or control when the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial; (2) reports of examinations and tests if the item is within the government's possession, custody, or control, government counsel knows or through due diligence could have known the item exists, and the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

## IV.    ANALYSIS

A.    *Confrontation Clause*

Roberts contends that the District Court erred in admitting the Trace Summary into evidence because: (1) it had not been previously disclosed in discovery, as is required by Rule 16, despite its "obvious" materiality; (2) it constituted hearsay; and (3) its admission would violate the Confrontation Clause. (Appellant's Br. at 2.)

The government argues that it provided advance notice to the defense of the pertinent contents of the Trace Summary, by turning over the Detailed Trace in compliance with Rule 16 of the Federal Rules of Criminal Procedure.[5] The Detailed

---

[5] The Detailed Trace was not admitted into evidence.

9

Trace showed that (1) the firearm was manufactured by Ruger, and (2) that this particular firearm had been sold several times in Pennsylvania. The government contends that this was substantially the same information contained in the Trace Summary.[6]

In his December 16, 2010 28(j) letter to this Court, Roberts argues that the issue is whether a document reflecting the results of a Trace Summary is testimonial within the meaning of the Confrontation Clause and, if so, whether the government can meet its burden of proving, beyond a reasonable doubt, that the error did not contribute to the verdict.

We find that the Trace Summary is testimonial in nature,[7] within the meaning of the Confrontation Clause, because the Trace Summary was made for the purpose of establishing some fact with the intent to be introduced at trial. Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2532 (2009). Further, we find that the District Court erred in admitting the Trace Summary to prove the interstate commerce element of 18

---

[6] Both documents provide information that the gun had been manufactured by Ruger, which the uncontroverted evidence established manufactured that model gun in either Connecticut or New Hampshire, and ended up in Pennsylvania. On the other hand, the Trace Summary provides information that the Ruger had been sold in Ohio before being sold in Pennsylvania. Based on this circumstance, the Trace Summary is, for purposes of showing the interstate commerce element, cumulative of the Detailed Trace.

[7] In its second December 16, 2010 28(j) letter to the Court, the government disagrees with Roberts that the Trace Summary is testimonial in nature, but agrees that the Trace Summary contains "hearsay of some stripe." In the same letter, the government also admits that the District Court erred in admitting the document as nonhearsay, and concedes that, even if the Trace Summary contained nontestimonial hearsay, there is an insufficient factual record to support its admission under one of the exceptions to the hearsay rule, namely, Federal Rule of Evidence 807.

10

U.S.C. § 922(g)(1) because the Trace Summary violated the Confrontation Clause of the Constitution of the United States.[8]  The person who created the Trace Summary, an unidentified agent at the ATF National Tracing Center, was not presented at trial and Roberts was deprived of an ability to confront him or her.

## B.    *Harmless Error*

Our analysis now requires us to determine whether the admission of the Trace Summary was harmless error.  An error is harmless if it "does not affect substantial rights" of the defendant.  FED. R. CRIM. P. 52(a).  An error in admitting plainly relevant evidence that possibly influenced the jury adversely to a litigant cannot be conceived of as harmless.  Chapman v. California, 386 U.S. 18, 23-24 (1967).  Before a constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  Id. at 24.

"Whether . . . an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts."  Delaware, 475 U.S. at 684.  These factors include: (1) the importance of the Trace Summary to the prosecution's case; (2) whether the Trace Summary was cumulative; (3) the presence or absence of evidence corroborating or contradicting the Trace

---

[8]  "A criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination . . ."  Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986).

11

Summary on material points; (4) the extent of cross-examination otherwise permitted; (5) and the overall strength of the prosecution's case. Id.

As stated in Sullivan v. Louisiana, 508 U.S. 275, 279 (1993), when determining whether an error is harmless, "the inquiry is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to that error." Under Chapman, "certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the factfinding process at trial." Id. at 279. The Supreme Court has stated that harmless error review looks "to the basis on which the jury actually rested its verdict." Id.

> We have stated that —
>
> The erroneous admission of testimonial hearsay in violation of the Confrontation Clause is "'simply an error in the trial process itself' . . . [that] we may affirm if the error was harmless." United States v. Hinton, 423 F.3d 355, 361-62 (3d Cir. 2005) (applying harmless error analysis to a Confrontation Clause challenge); see United States v. Lore, 430 F.3d 190, 209 (3d Cir. 2005) (considering whether an error was harmless beyond a reasonable doubt).

United States v. Jimenez, 513 F.3d 62, 78 (3d Cir. 2008).

When we apply the harmless error analysis, as articulated in Chapman, Delaware, Sullivan, and Jimenez to the facts of this case, we find that the error in admitting the Trace Summary was harmless beyond a reasonable doubt. Id. As we stated in Jimenez, a reviewing court must determine whether any Crawford

12

(Confrontation Clause) violation, regarding improperly admitted evidence, was harmless beyond a reasonable doubt.

Here, the Trace Summary was not critical to the Government's case, as there was no reasonable doubt about the interstate commerce element under § 922(g)(1).[9] First, there was no evidence, testimonial or documentary, which established or even suggested that the designation or markings on the gun itself are not authentic. Second, Agent Willgohs testified to the place of manufacture of the Ruger, establishing that it was not Pennsylvania. Agent Willgohs testified that Ruger guns, at the time the gun in question was manufactured, were exclusively manufactured in Connecticut or New Hampshire. There is no evidence in the record that Ruger guns are manufactured in Pennsylvania. Third, the Ruger gun was recovered from a creek, where Officer Janus had seen Roberts toss it, in

---

[9]   The government argues that we may uphold Roberts' conviction on the alternative theory that the ammunition crossed state lines, as this theory in no way relies on the disputed Trace Summary. Because the indictment was phrased in the conjunctive, the jury could convict Roberts as long as it found that either the gun or the ammunition had crossed state lines. 18 U.S.C. § 922(g) and § 922(g)(1). The usual rule is that "[w]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any of the acts charged." United States v. Vampire Nation, 451 F.3d 189, 204 (3d Cir. 2006) (internal citations omitted). However, that is not the rule for constitutional errors. If there is a constitutional violation, "the reviewing court should vacate and remand for a new trial without the invalid or unconstitutional theory," United States v. Syme, 276 F.3d 131, 144 (3d Cir. 2002), unless the court is confident beyond a reasonable doubt that the error did not contribute to the verdict. Chapman, 386 U.S. at 24. We must therefore analyze the impact of the Trace Summary on the general verdict considering the whole record. Delaware, 475 U.S. at 681.

13

Pennsylvania. Fourth, Agent Willgohs testified that the basis for his opinion at trial and in his expert report that the gun was manufactured by Sturm Ruger & Company, Inc., in Southport, Connecticut, or New Port, New Hampshire, was the "compilation of reference material" he had gathered over his 21 years as an ATF firearms field agent; his familiarity with Ruger's manufacturing process, including his two visits to Ruger plants; his "hundreds of examinations of firearms;" the Blue Book, 27th Edition; and the Gun Trader's 24th Edition. (App. Vol. II, 127, 128, 135, 144.) He did not rely on the Trace Summary during his testimony at trial.

Both Agent Willgohs and Agent Truchanowicz were subject to rigorous cross-examination.[10] Throughout their examination, no evidence came before the jury challenging the government's proposition that the gun traveled through interstate commerce. Agent Truchanowicz testified that the Trace Summary provided "the history of the firearm," including that it was manufactured by Sturm and Ruger in Southport, Connecticut, and that it was sold first in Ohio and then in Pennsylvania. However, Agent Willgohs testified, based on independent sources and his 21 years of experience, that all Rugers of this model were made in either Connecticut or New Hampshire, and that this gun was, in his expert estimation, an authentic Ruger. He testified that, although he had seen some homemade

---

[10] Although a factor to be considered under Delaware, the agents' cross-examination is in and of itself not a relevant factor here since neither was the author of the Trace Summary.

firearms, in his 21 years of inspecting hundreds of guns he had never seen one duplicated or counterfeited to look like a real Ruger. Although the evidence that the gun was sold in Ohio does not appear elsewhere in the record aside from the Trace Summary, this is immaterial to the government's proof of the interstate commerce nexus where they showed that this Ruger, found in Pennsylvania, had to have traveled in interstate commerce because all Rugers are made outside the state.

There is nothing in the record that gives us any reason to believe the jury rested its verdict on the Trace Summary, as there was no evidence at trial introducing any reasonable doubt that the gun might have been manufactured in Pennsylvania. Given the evidence put forth by the government that all Rugers, including this one, are made outside of Pennsylvania, and the lack of any countervailing evidence that the gun was either a counterfeit or may have been made in Pennsylvania, there was no basis for any doubt in the jury's mind which the Trace Summary may have put to rest. Chapman, Delaware, Sullivan, and Jimenez are satisfied. Based on the record evidence, we find that any Confrontation Clause violation that occurred as a result of the improperly admitted Trace Summary was harmless beyond a reasonable doubt.

C.    *Federal Rule of Criminal Procedure 16*

15

Roberts also contends that he was not notified of the government's intent to use the Trace Summary until the day of trial.[11] According to Roberts, the government had the Trace Summary in its possession at least a year before providing it to the defense, evidenced by Agent Truchanowicz's testimony that he had ordered the Trace Summary approximately one year before trial. Since the notice requirement was not met, we also find that the government violated FED. R. CRIM. P. 16, for failing to disclose the Trace Summary during discovery. However, we similarly find that error to be harmless beyond a reasonable doubt for the same reasons set forth above.

## V.    CONCLUSION

We find that the District Court erred in admitting the Trace Summary into evidence. The decision to admit the Trace Summary was an error in the trial process itself, not a structural defect affecting the framework within which the trial proceeds, and was therefore subject to harmless error analysis. Having conducted that analysis, we conclude that it was harmless beyond a reasonable doubt. We also find that, under Rule 16, the Trace Summary should have been provided to Appellant during discovery. We find that this failure to disclose was also harmless beyond a reasonable doubt.

In light of the overwhelming evidence produced by the government, including the testimony of both Agent Truchanowicz and Agent Willgohs, we believe there was

---

[11] The defendant was well aware in advance of the government's argument on this point, since the Detailed Trace (which provided the same essential facts as the Trace Summary), had been provided to defense counsel during discovery.

16

sufficient evidence to ensure that the jury's guilty verdict for possession of a firearm that had traveled in interstate commerce was unattributable to the improper admission of the Trace Summary.[12] Therefore, for the reasons provided, we affirm the judgment of conviction by the District Court. [13]

---

[12] United States v. Hardwick, 544 F.3d 565, 574 (3d Cir. 2008) (where the Third Circuit held that "the overwhelming evidence convinces us that the District Court's error was harmless beyond a reasonable doubt.") "A … violation will not result in a reversal where the independent, 'properly admitted evidence of [the defendant's] guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.'") Id. (Internal citations and quotations omitted).

[13] We also grant Appellee's Motion to Supplement the Record on Appeal with Volume II of the Supplemental Appendix.